JOHN L. POOR vs. ANNETTE POOR
(and a companion case[1]).

Suffolk. May 5, 1980. — August 28, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Divorce. Estoppel.*

Where a husband and wife were divorced in Haitian proceedings and the
    wife subsequently remarried, believing her divorce was valid, and
    where her second husband, who had also believed the divorce was
    valid, subsequently left the wife for reasons unrelated to any concern
    over the possible invalidity of the divorce, the second husband was es-
    topped from challenging the validity of the foreign divorce in his com-
    plaint for annulment of the marriage and in the wife's separate sup-
    port action. [393-397]

CIVIL ACTION commenced in the Probate Court for the
county of Suffolk on November 17, 1975.

The case was heard by *Warner*, J., on a motion to dismiss.

CIVIL ACTION commenced in the Probate Court for the
county of Suffolk on January 6, 1976.

An interlocutory order was entered by *Warner*, J., and
reported by him to the Appeals Court. The Supreme Judi-
cial Court, on its own initiative, ordered direct review of
both cases.

*R. K. Gad, III*, for John L. Poor.

*Newton H. Levee* for Annette Poor.

ABRAMS, J. John L. Poor sought an annulment of his
marriage to Annette Poor based on the invalidity of
Annette's Haitian divorce from one Joseph LoRusso. An-
nette sought custody of the two minor children born to John
and herself and separate support for herself and the chil-
dren. The complaints were consolidated in a Probate Court.

[1] Annette Poor vs. John L. Poor.

The major issue before us is whether John should be estopped from challenging the validity of Annette's foreign divorce. After hearing, the judge ruled that Annette's Haitian divorce was invalid under G. L. c. 208, § 39.[2] He concluded, however, that it would now be inequitable to permit John to challenge the validity of Annette's Haitian divorce. He therefore dismissed the complaint for annulment and entered an order barring John from challenging the validity of Annette's divorce in the separate support action. John appealed from the dismissal of his annulment complaint. The judge stayed the proceedings in the separate support action and reported his interlocutory order to the Appeals Court pursuant to G. L. c. 215, § 13. We transferred both cases to this court on our own motion. We affirm both the dismissal of the annulment complaint and the order entered in the separate support action.

As a matter of constitutional law, the "full faith and credit" clause of the Federal Constitution estops a person who has appeared and participated in a divorce action in another State from challenging the divorce's validity. *Sherrer* v. *Sherrer*, 334 U.S. 343, 351-352 (1948). *Williams* v. *North Carolina*, 325 U.S. 226 (1945). *Colarusso* v. *Teachers' Retirement Bd.*, 378 Mass. 470, 472-473 (1979). *Heard* v. *Heard*, 323 Mass. 357 (1948).

Aside from constitutional requirements, participation or connivance in the procurement of an out-of-State divorce, coupled with receipt of financial benefits and the subsequent remarriage of one or both of the parties has been held to foreclose a party from making a subsequent attack on the divorce. *Langewald* v. *Langewald*, 234 Mass. 269 (1920). *Chapman* v. *Chapman*, 224 Mass. 427 (1916). *Loud* v. *Loud*, 129 Mass. 14 (1880). See also *Dennis* v. *Dennis*, 337

---

[2] General Laws c. 208, § 39, as amended by St. 1975, c. 400, § 39, provides as follows: "A divorce adjudged in another jurisdiction according to the laws thereof by a court having jurisdiction of the cause and of both the parties shall be valid and effectual in this comonwealth; but if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth."

Mass. 1, 4 (1958). Similarly, a challenge to a divorce obtained in a foreign country was precluded where the attacking party had acquiesced in the Mexican decree through her attorney, in exchange for which she received valuable consideration. See *McCarthy* v. *McCarthy,* 361 Mass. 359 (1972). See generally *Trivanovitch* v. *Hobby,* 219 F.2d 762, 763 (D.C. Cir. 1955).

Persons challenging the validity of an out-of-State marriage contracted in violation of Massachusetts law have been estopped where the attacking party "made his own wrongful conduct the ground for an application for relief from its consequences." *Belcher* v. *Belcher,* 324 Mass. 757 (1949). *Korostynski* v. *Korostynski,* 328 Mass. 6 (1951). *Ewald* v. *Ewald,* 219 Mass. 111 (1914). In each of these cases, the party seeking to avoid the marriage knowingly participated in the ceremony with full awareness of the legal impediments involved.[3]

The present case does not fall squarely within the principles established by these precedents because we have not previously estopped a stranger to the divorce such as John from collaterally attacking a foreign decree such as that obtained by Annette and Joseph LoRusso. See *Old Colony Trust Co.* v. *Porter,* 324 Mass. 581, 588 (1949). We now consider the correctness of the judge's rulings.

The judge made the following findings of fact. In 1955, Annette married one Joseph LoRusso and lived with him until 1972. Sometime in 1972 Joseph LoRusso left Annette, and on or about November 22, 1972, he went to Haiti and commenced a proceeding for divorce against her. Annette appointed an attorney to represent her in the Haitian proceedings. She also filed an appearance and a submission to the jurisdiction of the Haitian court but she did not appear

---

[3] In *Korostynski,* the marriage took place in New Hampshire before the respondent's Massachusetts divorce decree became final. In *Ewald* and *Belcher,* the parties remarried in violation of the then existing prohibition against remarriage by the party against whom the divorce was granted until two years after the divorce decree became final. See, e.g., G. L. c. 208, § 24, as amended by St. 1943, c. 168, § 1.

in person.  LoRusso spent no more than twenty-four hours in Haiti.  On the same day that the divorce action was filed, the Haitian court granted the divorce on the ground of "incompatibility of character."[4]

After Annette's divorce from LoRusso, she and John participated in a marriage ceremony in Boston, on August 21, 1973.  John had previously examined Annette's divorce papers.  He knew that Joseph LoRusso, an employee of a business John owned, had gone to Haiti for the divorce.  At the time of his marriage to Annette, John was capable of contracting marriage and was of the full belief that Annette's divorce was valid and that she was free to marry.  Annette also believed that she had been validly divorced.

John and Annette lived together from August 21, 1973, until October 30, 1975.  Two children were born, one on June 6, 1974, and another on November 13, 1975.  On October 30, 1975, John left the marital home and has not returned.  The judge specifically found that John first doubted the validity of the Haitian divorce on or after October 30, 1975.  The judge's findings also detail various financial transactions in which Annette's resources were used by John.

The judge ruled that "[a]lthough the facts do not support the invocation of the doctrine of estoppel, in its true sense,[5] on all of the evidence . . . it would be inequitable to permit John in these actions to challenge the validity of the Haitian divorce."

---

[4] The divorce decree also recited that both parties were living and domiciled in Massachusetts.

[5] The judge expressly found that John made no misrepresentation of fact or law to Annette.  See *Industrial Bankers of Mass., Inc.* v. *Reid, Murdoch & Co.*, 297 Mass. 119, 124 (1937).  We have, however, indicated that the policy considerations underlying the use of estoppel are expansive rather than narrow.  "It is in the main to accomplish the prevention of results contrary to good conscience and fair dealing that the doctrine of estoppel has been formulated and taken its place as a part of the law." *McLearn* v. *Hill*, 276 Mass. 519, 524 (1931).  See Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L.J. 45, 57-58 (1960).

In arguing that estoppel is inappropriate, John focuses on his good faith and innocence. John's present attack on Annette's divorce, however, is totally inconsistent with his conduct prior to the time he left their home. There is no indication in the record that John's decision to leave the marital home was based in any way on concerns over the possible invalidity of Annette's divorce. Annette, furthermore, relied in good faith on the validity of her divorce. Thus, both Annette and John undertook their marital obligations in the belief that Annette's divorce was valid. In such circumstances there is no reason to permit either party now to contradict vows solemnly and deliberately made two years earlier. See Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L.J. 45, 56-57 (1960); Restatement (Second) of Conflict of Laws § 74, Comment b (1971); *Kazin v. Kazin,* 81 N.J. 85 (1979); *In re Marriage of Winegard,* 278 N.W.2d 505 (Iowa), cert. denied sub nom. *Winegard* v. *Gilvin,* 444 U.S. 951 (1979). See also Note, Enforcement by Estoppel of Divorces Without Domicil: Toward a Uniform Divorce Recognition Act, 61 Harv. L. Rev. 326, 333-334 (1948).

Estoppel in these circumstances permits the judge to consider fully issues of separate support, alimony, and the division of property in the course of probate proceedings for divorce, custody or separate support. See G. L. c. 208, §§ 1, 28, 34; G. L. c. 209, §§ 32, 37; *Spellens* v. *Spellens,* 49 Cal. 2d 210 (1957);[6] *Dietrich* v. *Dietrich,* 41 Cal. 2d 497 (1953), cert. denied, 346 U.S. 938 (1954); *Kazin* v. *Kazin, supra.* No social policy is served by a requirement that the judge ignore the subsequent marriage.

John suggests that estoppel is inappropriate because Annette's marriage to him is "bigamous." That argument is irrelevant to the issue before us. Further, John's reliance on *Puzo* v. *Puzo,* 342 Mass. 775 (1961) is misplaced. In *Puzo,*

---

[6] "The theory is that marriage is not made valid by reason of the estoppel but that the estopped person may not take a position that the divorce or latter marriage was invalid." *Spellens* v. *Spellens,* 49 Cal. 2d 210, 219 (1957).

there was no purported divorce by the wife from her prior husband and hence no reliance on what the parties all thought was a valid divorce.

Finally, John suggests that G. L. c. 208, § 39, precludes the judge's invocation of estoppel principles in this case. We disagree. Estoppel does no more than prevent a person from making a complaint. The statute does not purport to prevent a court from determining who may appropriately make a complaint challenging the validity of a foreign divorce. Nor does it specify that a court must ignore a person's own conduct in determining whether a decree may be attacked. Thus, the action taken by the judge was well within the bounds of judicial discretion. We perceive no error in the judge's balancing of the equities. See *Ewald* v. *Ewald, supra*; *McCarthy* v. *McCarthy, supra*; *Bergeron* v. *Bergeron*, 287 Mass. 524, 528-529 (1934).[7] See also *Dietrich* v. *Dietrich, supra* at 505; *Schotte* v. *Schotte*, 203 Cal. App. 2d 28 (1962); *Zirkalos* v. *Zirkalos*, 326 Mich. 420 (1949); *Judkins* v. *Judkins*, 22 N.J. Super. 516 (1952).

We conclude that there was no error in the dismissal of John's annulment complaint, and affirm the judgment of dismissal. We affirm the order entered in Annette's action[8] for custody and separate support, and remand the action to the Probate Court for proceedings consistent with this opinion.

*So ordered.*

---

[7] John argues that *Langewald* v. *Langewald*, 234 Mass. 269 (1920), precludes estoppel in this case. He relies on the statement that "[t]he express provision of the statute [a prior version of G. L. c. 208, § 39], declaring that such divorce shall be of no force or effect in this State, is not made for the benefit of a party . . . but it is made upon high considerations of general public policy and public interest, the provisions of which cannot be waived." *Id.* at 271-272, quoting from *Chase* v. *Chase*, 6 Gray 157, 161 (1856). In *Langewald*, however, equitable considerations prevailed, and the wife's libel for divorce was dismissed because the wife accepted benefits based on the foreign divorce. *Id.* at 272.

[8] The result we reach in this case is not based on any approval by us of the practice by some citizens of this Commonwealth of going to Haiti to obtain a divorce, thereby avoiding the requirements of the Massachusetts divorce laws. We merely conclude that in this case the judge properly exercised his equitable powers.