ELIZABETH BROOKS KOSAK vs. KATHLEEN MACKECHNIE &
                          others.[1]

            Hampden. November 17, 1986. — April 3, 1987.

            Present: ARMSTRONG, PERRETTA, & SMITH, JJ.

*Practice, Civil,* Findings by judge. *Divorce and Separation,* Foreign divorce. *Estoppel.*

In an action to quiet title to certain real property and thereby establish the plaintiff's sole ownership as the surviving tenant by the entirety, the plaintiff was precluded from attacking the validity of the Mexican divorce she had sought and obtained from her first husband and cotenant over fifteen years before his death, where the plaintiff had remarried and remained married for seven years believing her divorce to be valid, and where this court could infer that her purpose in consulting an attorney and commencing a new divorce proceeding shortly before the first husband's death had been to make a claim upon the property, as well as to confirm her marital status. [22-25]

CIVIL ACTION commenced in the Superior Court Department on September 8, 1983.

The case was heard by *Raymond R. Cross,* J.

*John M. Discenza* for the defendants.

*William C. Flanagan* for the plaintiff.

PERRETTA, J. In this action in the Superior Court to quiet title to property, the plaintiff attacked the validity of a 1967 foreign judgment of divorce which she had obtained from Anthony J. Kosak (Anthony), who died in 1983, and claimed sole ownership of the property as the surviving tenant by the entirety. The defendant, the daughter of the plaintiff and Anthony, disputes the plaintiff's right to deny the divorce and claims an interest in the realty through Anthony. The trial judge allowed the plaintiff to challenge the divorce because:

---

[1] The heirs and representatives of Anthony J. Kosak.

(1) she received no financial benefits from Anthony as a result of the divorce decree; (2) she acted in the good faith belief that the decree was valid; and (3) when in 1982 she was advised by counsel that the divorce was invalid, she took steps in Massachusetts to divorce Anthony, but he died before a hearing on her complaint for divorce could be held. He then determined that the foreign judgment of divorce was invalid and that the plaintiff was the owner in fee simple of the property. We conclude that, in light of the circumstances here presented, the plaintiff is precluded from attacking her divorce. We reverse.

I. THE CIRCUMSTANCES.

We recite the facts as they are found in the undisputed testimony and documentary evidence. Shortly after their marriage in 1949, the plaintiff and Anthony purchased a house in Feeding Hills, taking title as tenants by the entirety. Two children were born of the marriage in the early 1950's. In 1964, the plaintiff left the marital residence and filed for a divorce in the Hampden County Probate Court, alleging cruel and abusive treatment by Anthony. Although the plaintiff was denied a divorce, she was awarded custody of the defendant and a weekly amount for her support.[2] The plaintiff did not thereafter reside in the marital residence. The defendant, in 1965, returned to that house to live with her father.

Some time in 1966, the plaintiff and Louis R. Tatro, friends for almost thirty years, began to see each other socially. In July of 1967, they traveled to Mexico for the sole and express purpose of the plaintiff's obtaining a divorce from Anthony. They remained in Mexico for no more than twenty-four hours, and the plaintiff was granted a divorce on the same ground, if not the same proof, that she had been unable to establish in Massachusetts three years earlier. Anthony took no part in the divorce proceeding, either personally or through counsel.

Three months after their return to the United States the plaintiff married Tatro in Connecticut. Their marriage license indicates that Tatro represented that he had been divorced and that this was his second marriage. The plaintiff identified her-

---

[2] Custody and support of the son were never at issue.

self by her parents' name (Rich)[3] and represented that she had never been married, and that her marriage to Tatro was her first. After their marriage, the plaintiff and Tatro returned to Massachusetts, where they resided as husband and wife for about seven years. During that seven-year period, Tatro and the plaintiff held property in their joint names and filed joint income tax returns.

In 1974, the plaintiff withdrew $16,000 from a bank account which she held jointly with Tatro (leaving about $1,000 for him), took their new car, and drove to Florida, where she apparently has resided since.[4] The marriage between the plaintiff and Tatro was annulled by a judge of the Hampden County Probate Court (the record does not reveal who initiated the proceeding, but we assume that it was the plaintiff, see *Korostynski* v. *Korostynski,* 328 Mass. 6, 8 [1951]) on July 14, 1976, because it appeared that, at the time of the marriage, Tatro had been legally wed to another.

The first sign of interest by the plaintiff in her former marital residence came in 1982. She consulted with an attorney to determine her rights in that property. When the attorney advised her that the Mexican divorce decree was invalid and that she must divorce Anthony to separate her interest in the property from his, she promptly attempted to so. However, Anthony died one month before the scheduled hearing on the plaintiff's complaint for divorce.

II. ESTOPPEL.

We consider first whether the plaintiff should be precluded in this action from challenging the validity of her Mexican decree of divorce because if she is estopped from so doing, the validity of the divorce becomes irrelevant. In determining whether she can attack the divorce she sought and obtained, we do not look for the usual essential elements giving rise to

---

[3] The Mexican divorce decree provides that the "name of the [p]laintiff will be restored, and in the future she will be called: Elizabeth Agnes Brooks." The record offers no explanation of the plaintiff's use of the name Brooks.

[4] In her complaint, the plaintiff identifies herself as being of West Palm Beach, Florida.

an estoppel in its traditional or classical sense. See, e.g., *Cellucci* v. *Sun Oil Co.,* 2 Mass. App. Ct. 722, 728 (1974), and cases therein cited, *S.C.,* 368 Mass. 811 (1975). Rather, we look at the totality of the circumstances. As stated in Restatement (Second) of Conflict of Laws § 74 (1971), cited with approval in *Poor* v. *Poor,* 381 Mass. 392, 396 (1980): "A person may be precluded from attacking the validity of a foreign divorce if, under the circumstances, it would be inequitable for him to do so." Comment b to § 74 explains: "The rule is not limited to situations of what might be termed 'true estoppel' . . . [It] may be applied whenever, under all the circumstances, it would be inequitable to permit a particular person to challenge the validity of a divorce decree."[5]

In reaching the ultimate conclusion of law that the plaintiff could attack the judgment of divorce, the trial judge relied primarily, if not exclusively, upon *Poor* v. *Poor,* 381 Mass. 392, apparently persuaded by the facts that the plaintiff received no financial benefit from the divorce and that she acted at all times in the good faith belief that her divorce was valid. The trial judge's material findings of fact are based upon undisputed testimony and documentary evidence. We are, therefore, free to draw our own inferences and, of course, reach our own conclusions of law. See *Bankers Trust Co.* v. *Dockham,* 279 Mass. 199, 200 (1932); *Arlington Trust Co.* v. *Pappalardo,* 383 Mass. 870, 871 (1981); *Simon* v. *Weymouth Argicultural & Industrial Soc.,* 389 Mass. 146, 148-149 (1983).

As we study the evidence, we think it plain that from 1964 until Anthony's death in 1983, the plaintiff had no desire to be Anthony's wife. When she was unable to obtain a divorce in Massachusetts, she went to Mexico. She thereafter comported herself as if she were in fact divorced from Anthony. We have no reason to question that her belief in the validity of her divorce was sincere. It is, however, the plaintiff's good faith belief, as well as certain portions of her candid testimony,

---

[5] In *Poor* v. *Poor,* 381 Mass. 392, the unsuccessful collateral attack on the foreign judgment of divorce was made by a stranger to those proceedings, the wife's second husband.

which leads us to infer that her primary purpose for consulting with an attorney fifteen years after the Mexican divorce was to ascertain whether she had any rights in the former marital residence and that she filed for a divorce not only to confirm her marital status but to make a claim upon the property. See Restatement (Second) of Conflict of Laws § 74 comment b, *supra*: "The rule's scope of application varies from state to state and, even within the confines of a single state, is often clouded with uncertainty. In general, it may be said that a person who obtains a divorce and then remarries will not be permitted to attack the validity of the divorce . . . in order to claim an inheritance from the estate of the first spouse." We do not think that the plaintiff's subsequent marriage to Tatro, which ended in an annulment through no cause attributable to her, is of any significance except as evidence that she did not wish to be married to Anthony and that she believed she was free to wed Tatro.

There is nothing in *Poor* v. *Poor,* 381 Mass. at 394-396, which stands for the proposition that a challenge to a foreign divorce will succeed simply because the party attacking that judgment received no financial benefit or other valuable consideration in exchange for the conduct sought to be avoided. Rather, that is but one of many factors that may be considered in determining that ultimate issue — whether it would be inequitable to permit the challenge. *Poor* v. *Poor,* 381 Mass. at 395. We can think of no social policy that would here be served by allowing the plaintiff to attack the validity of her foreign divorce decree. "We have . . . indicated that the policy considerations underlying the use of estoppel are expansive rather than narrow. 'It is in the main to accomplish the prevention of results contrary to good conscience and fair dealing that the doctrine of estoppel has been formulated and taken its place as a part of the law.' *McLearn* v. *Hill,* 276 Mass. 519, 524 (1931). See Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L.J. 45, 57-58 (1960)." *Poor* v. *Poor,* 381 Mass. at 395 n.5.

Our result does not ignore the plaintiff's right to claim an interest in the property. See *Bernatavicius* v. *Bernatavicius,*

259 Mass. 486, 490 (1927) ("[T]he operation of a divorce of the parties upon a tenancy by the entirety creates a tenancy in common"). We simply conclude that in so doing, the plaintiff is precluded from attacking the validity of her 1967 Mexican decree of divorce from Anthony.

The judgment is vacated, and the matter is remanded to the Superior Court for entry of a judgment consistent with this opinion.

*So ordered.*