EDWARD L. CREASE vs. ROSE M. CREASE.

No. 91-P-1030.

Hampden. January 15, 1993. - February 26, 1993.

Present: KASS, GILLERMAN, & PORADA, JJ.

*Husband and Wife*, Separate support. *Divorce and Separation*, Validity of marriage, Annulment. *Estoppel*.

On appeal from a purported order of dismissal by a Probate Court judge of a complaint for divorce in a proceeding in which the nullity of the parties' New Jersey marriage by reason of the operation of G. L. c. 207, § 10, was raised as a defense, this court, noting that the judge apparently had made no dispositive orders, remanded the case to the Probate Court for a determination whether the husband is to be estopped from denying his marriage to the wife, as well as the subsequent determination of what support, if any, shall be ordered. [188-190]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on August 10, 1990.

The case was considered by *Joseph E. Rodgers*, J.

*Dianne M. Dillon* for Edward Crease, submitted a brief.

KASS, J. One month after Rose M. Clay obtained a judgment of divorce nisi in 1983 from William A. Clay in the Commonwealth, Rose M. Clay participated in a marriage ceremony with Edward L. Crease in Long Branch, New Jersey. On the application for the marriage license, she stated her name as Rose M. Johns, and she and Edward L. Crease listed 140 James Street, Long Branch, New Jersey as their place of residence. Following the New Jersey ceremony, Edward L. Crease and Rose M. Crease, as she now called herself, returned to Massachusetts and lived as a married couple in Chicopee.

Some seven years later, on August 10, 1990, Rose filed a complaint for divorce against Edward in the Hampden Pro-

bate Court. Edward set up as a defense the invalidity and, indeed, nullity of the New Jersey marriage by reason of the operation of G. L. c. 207, § 10. That statute provides:

> "If any person residing and intending to continue to reside in this commonwealth is disabled or prohibited from contracting marriage under the laws of this commonwealth and goes into another jurisdiction and there contracts a marriage prohibited and declared void by the laws of this commonwealth, such marriage shall be null and void for all purposes . . . ."

Rose's difficulty on April 8, 1983, when she went through the purported marriage ceremony in New Jersey, was that at that time her judgment of divorce was not absolute, and she was not free to marry. See G. L. c. 208, § 21. The judgment nisi waiting period in 1983 was six months. Statute 1984, c. 311, shortened the nisi period to ninety days. In addition to his answer, Edward lodged a cross complaint for annulment of the New Jersey marriage.

A judge of the Probate Court found that when they participated in the marriage ceremony in New Jersey both Rose and Edward knew of the impediment to marrying from which Rose suffered. Rather than acting on either the complaint for divorce or annulment, the judge determined to let Rose and Edward Crease stew in their own sour domestic juice. "This Court," the judge wrote in a memorandum, "is not going to grant its imprimatur to these proceedings on the basis of the 'unclean hands' of the parties. They are going to be left in the position they have brought about by their deliberate and intentional disregard for the laws of this Commonwealth."

In its dismissive spirit, the judge's disposition was in tune with *Ewald* v. *Ewald*, 219 Mass. 111, 113 (1914), *Belcher* v. *Belcher*, 324 Mass. 757 (1949), and *Korostynski* v. *Korostynski*, 328 Mass. 6, 8 (1951), but those cases involved only petitions for an annulment. Here the case is more complex by reason of Rose's complaint for divorce with her attendant request for support. Notwithstanding a statement in *Gerrig*

v. *Sneirson*, 344 Mass. 518, 520 (1962), that conscious entry into an invalid marriage bars an action for separate support, more recent cases have established that one who solemnly exchanges vows of marriage may be estopped to deny the consequences of those vows. See *Poor* v. *Poor*, 381 Mass. 392, 396 (1980); *Suneson* v. *Suneson*, 24 Mass. App. Ct. 940, 940-941 (1987). See also *Kosak* v. *MacKechnie*, 24 Mass. App. Ct. 20, 22-24 (1987). The underlying principle in these cases is not so much classic estoppel — i.e., inducement, reliance, change of position, and damage — as that it is inconsistent with good conscience and fair dealing to permit someone who holds herself or himself out as a spouse and lives as a spouse later to manipulate to that person's benefit a legal infirmity which she or he contrived. See *Poor* v. *Poor*, 381 Mass. at 395 & n.5; *Kosak* v. *MacKechnie*, 24 Mass. App. Ct. at 24.

As between Edward and Rose, it is appropriate to take into account that they relied on the New Jersey marriage to settle into a connected life which, as between them, produced mutual expectations. See Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L.J. 45, 57-59, 64-65 (1960). Refusing to permit either spouse to raise the invalidity of the New Jersey marriage against the other does not make that marriage valid in the eyes of Massachusetts. Their marriage may be a nullity in a variety of circumstances — not involving their relationship to each other — which we do not attempt to envision or analyze. So far as regards the status of Rose and Edward to each other, it advances no social interest to invite them to disavow their ostensible marriage status "when tired of such situation." See *Spellens* v. *Spellens*, 49 Cal. 2d 210, 219 (1957).

It is a peculiarity of the record in this case that the probate judge appears to have made no dispositive orders. Edward's appeal is from a purported order of dismissal by the probate judge, but no such order appears on the docket. The judge cannot simply leave the parties in a domestic limbo. The judge's memorandum says only that Rose and Edward were domiciled in Massachusetts after the New Jersey wed-

ding ceremony, but Edward in his brief on appeal concedes that he and Rose, when they returned to this State, lived together as husband and wife. That would appear to be sufficient, on the basis of the principles we have discussed, to estop Edward from denying marriage to Rose. If so, it follows that Rose may, as against Edward, press a claim for support consistent with the applicable criteria of G. L. c. 208, § 34. Although they seem not to be in dispute, the decisive facts to work an estoppel have yet to be found. Estoppel, as an equitable principle, also vests certain discretion in the judge. For those reasons it is appropriate to leave to a probate judge whether a determination of estoppel is to be made, as well as the subsequent determination of what support, if any, shall be ordered.

We remand the case to the Probate Court for further proceedings consistent with this opinion. The judge who originally heard the case has retired. The judge who succeeds to the case may exercise discretion whether to hold additional hearings to determine the issues of estoppel and entitlement, if any, to support. In all events, the judge is to make a dispositive order as to each action.

*So ordered.*