DEBORAH BEDARD & others[1] *vs.* ETHAN B. CORLISS,
administrator[2] (and a companion case[3]).

Nos. 11-P-2118 & 11-P-2173.

Norfolk. June 5, 2012. - August 23, 2012.

Present: BERRY, SMITH, & RUBIN, JJ.

*Marriage. Executor and Administrator,* Appointment. *Probate Court,*
Administrator. *Estoppel. Devise and Legacy,* Intestacy. *Unjust Enrichment.*
*Mistake.*

This court concluded that, in a civil action brought in the Probate and Family
Court for administration of a decedent's estate, reversal was required of a
judgment revoking the appointment of the administrator and striking him
from the list of heirs, where, although the marriage of the decedent and the
administrator was not valid, the decedent's children were estopped from
challenging the validity of the marriage given that the decedent herself,
having obtained the benefits of marriage, would have been estopped
[364-365]; further, this court concluded that remand was required of the
judgment in a related, separate civil action brought by the administrator
against the decedent's children, claiming unjust enrichment arising from
the administrator's payment to the children of funds from a bank account
that the administrator shared with the decedent [366].

PETITION filed in the Norfolk Division of the Probate and
Family Court Department on October 30, 2006.

CIVIL ACTION filed in the Norfolk Division of the Probate and
Family Court Department on April 20, 2010.

The cases were heard by *John D. Casey,* J.

*Robert F. Corliss* for Ethan B. Corliss.

*Michael H. Riley* for Deborah Bedard & others.

RUBIN, J. In this case we are presented with yet another

---

[1]Michelle Niday and Michael Bedard.

[2]Of the estate of Carol A. Bedard.

[3]Ethan B. Corliss *vs.* Deborah Bedard, Michelle Niday, and Michael Bedard.

unfortunate family conflict concerning an estate.[4] The following facts were found by a judge of the Probate and Family Court after trial.

On April 19, 1983, Ethan B. Corliss and Carol A. Bedard took part in a marriage ceremony in Tijuana, Mexico. The ceremony was conducted by a man holding himself out as an attorney. His secretary acted as a witness. The couple signed papers that were written in Spanish, which they did not understand. A few weeks later, a certificate of marriage written in English was mailed to them at their home in Massachusetts.

After the marriage ceremony, Ethan and Carol[5] lived together in Dedham until 2000, at which time the house in which they lived was sold. They then jointly purchased a condominium unit in St. Croix, United States Virgin Islands. They lived there together until Carol's death in 2004.

During the twenty-one years of their presumed marriage, Ethan and Carol filed joint tax returns. They maintained joint bank accounts, bought real estate in their joint names, titled their automobile in their joint names, signed insurance documents as husband and wife, and generally merged all their financial and legal affairs. Carol listed Ethan as her husband on her Massachusetts Teachers' Retirement application.

Ethan and Carol had no children together. Carol, however, had three children, now adults, from a previous marriage: Deborah Bedard, Michelle Niday, and Michael Bedard (collectively, the children). The judge found that Carol did not tell the children of her marriage until ten years after the fact. She also subsequently expressed to them some question about its validity.

On September 19, 2004, Carol died without a will. Among the assets held jointly by Ethan and Carol was a joint account that, by virtue of rights of survivorship, was owned in its entirety by Ethan after Carol's death. Money in the account had come in part from an inheritance Carol had received from her father.

It was Ethan's understanding that Carol wanted $120,000 of this money to go to the children upon her death. Although he

---

[4]This case involves two appeals. Because the appeals are related, we consider them together.

[5]We refer to the parties by their first names to avoid confusion.

was not legally obligated to do so, in 2005, Ethan distributed approximately $120,000 to the children from this account. Ethan sent Deborah and Michelle $29,477 each. They both accepted the payments. Ethan wrote a check for $61,142 payable to Michael and gave it to Deborah for transmission to Michael. Deborah deposited the check in a trust account for the benefit of Michael.

After obtaining each of the children's signed assents to a petition for administration of Carol's estate on which he listed himself as Carol's spouse, Ethan was appointed administrator of Carol's estate by the Probate and Family Court on February 16, 2007. At the time of her death, Carol individually owned a lakeside cottage located in Acton, Maine, where the couple spent their summers. The judge found that Ethan spent substantial time and money improving the cottage during the couple's twenty-one years together. According to Ethan's sworn affidavit, he installed a new kitchen with radiant heating; built three new bathrooms; added a large master bedroom suite; enlarged another bedroom as well as the main living room, kitchen, and entry; and revised the roof-line to enlarge a sleeping loft. He also installed skylights, replaced all existing windows and added many new ones, replaced the existing plumbing and installed a new hot water system, brought the electrical system up to code, put on a new roof, and extended the second floor of an outbuilding and connected it to water, septic, and electrical service. He did tile work, painted, and made all necessary repairs. He rebuilt the dock, arranged for landscaping, installed a cobblestone drive, and more. All of his work was approved by town inspectors.[6] After Carol's death, Ethan continued to occupy the cottage and pay all expenses, taxes, insurance, and utilities related to the cottage. It was Ethan's understanding of Carol's wishes that he was to have a life estate in the cottage, after which it would pass to the children. In ancillary proceedings in Maine, Ethan was appointed "domiciliary foreign personal representative" of Carol's estate in Maine, which consisted of the cottage, a vacant lot, and tangible personal property.

---

[6]The children argue that Ethan's affidavit is not properly before us and that we may not rely on it. Ultimately, we rely only on the judge's findings of fact. We recite some of the contents of the affidavit only to provide Ethan's description of the improvements he made to the cottage.

At some point, Deborah became dissatisfied with Ethan's performance as personal representative in Maine. In August, 2008, she filed a petition for "formal adjudication of intestacy and appointment of personal representative" with the Probate Court in Maine, requesting that Ethan be removed as personal representative and that she be appointed instead. In October, 2008, in an opposition to that petition, Ethan filed an affidavit along with a copy of the Mexican marriage certificate. It stated that he and Carol were married "on April 21, 1983 in San Pablo Del Monte in the state of Guerrero, Mexico." When deposed, however, Ethan testified that he and Carol had been married on April 19, 1983, in a lawyer's office in Tijuana, Mexico.

The children retained experts to investigate the validity of the marriage between Ethan and Carol. There is no record of a marriage between Ethan and Carol in the civil registry of the relevant Mexican States, or of the municipality of San Pablo Del Monte. Nor is there any record of a person bearing the name of the signatory on the marriage certificate, Sergio Brambila, ever having been an attorney in Mexico. The parties stipulated below that the marriage ceremony between Ethan and Carol was not in compliance with the statutory marriage laws of either of the relevant Mexican States.

On October 14, 2009, the children filed a petition to revoke the decree allowing Ethan's petition for administration of Carol's estate (administration case). Subsequently, Ethan filed a complaint in equity against the children (equity case).

The judge concluded that Ethan believed the marriage to be valid at the time of the Mexican ceremony, and believed it to be valid throughout the entirety of the purported twenty-one-year marriage between Carol and him. The judge concluded, in reliance on *Wilcox* v. *Trautz*, 427 Mass. 326, 330 (1998), that despite Ethan's belief, and despite the fact that Ethan and Carol held themselves out as married for over twenty-one years, Massachusetts does not recognize common-law marriages. The judge determined that Massachusetts does recognize as valid a marriage contracted in a foreign country in conformity with the laws of that country. See, e.g., *Gorrasi* v. *Manzella*, 287 Mass. 165, 169 (1934). But in light of the stipulation that Ethan's and

Carol's marriage was not valid under Mexican law, he found that the 1983 marriage was not valid.

As a consequence, in the administration case, the judge entered judgment revoking the decree appointing Ethan the administrator of Carol's estate. The judge concluded that since Ethan was not married to Carol at the time of her death he could not be appointed administrator of the estate. See G. L. c. 193, §§ 1 & 2;[7] *Dixon* v. *Clarke*, 323 Mass. 85, 86 (1948). In the judgment, the judge also struck Ethan's name from the list of heirs and appointed Deborah as administrator in his place. It is from this judgment that Ethan has appealed in the administration case.

In the equity case, the judge concluded that Ethan had distributed the approximately $120,000 owned by him to the children on the basis of two mistakes of fact. "The Court finds that Ethan made a mistake of fact when he believed that Carol's children considered Ethan to be Carol's husband, and Ethan made another mistake of fact when he believed that the children would follow through with their mother's wishes." The judge found that the two mistakes of fact made by Ethan resulted in unjust enrichment. Consequently, in a separate judgment on the complaint in equity, the judge ordered the children to return to Ethan the amount of $120,036 "as these funds were the sole property of [Ethan] as surviving joint owner." It is from this judgment in the equity case that the children have appealed.

*Discussion.* Ethan argues that the children are estopped from challenging the validity of the marriage in this case. In *Suneson* v. *Suneson*, 24 Mass. App. Ct. 940, 940-941 (1987), we concluded that a husband would be estopped from denying the validity of his marriage even though it turned out that the marriage was invalid because the putative wife's Mexican divorce from her previous husband was fraudulent and invalid. In that case, the first husband told the woman he was going to obtain a Mexican divorce. *Id.* at 940. She "consented and signed several forms, including a form submitting to the jurisdiction of the Mexican court and assenting to the entry of a divorce decree. Shortly

---

[7] These sections were repealed effective March 31, 2012, see St. 2008, c. 521, § 13, amended by St. 2010, c. 409, § 23, and St. 2011, c. 224; the repeal has no effect on the outcome of this appeal.

thereafter, she received through the mail a copy of a three-page document entitled 'Final Divorce Decree.' " *Ibid.* We further held, in reliance on Restatement (Second) Conflict of Laws § 74 comment b (1971), that the brother of the putative husband, himself "a stranger to the marriage," who had been designated by the putative husband as his beneficiary for retirement benefits under G. L. c. 32, § 11, was likewise estopped from challenging the validity of the marriage. *Id.* at 941.

The same principles are applicable here. Ethan and Carol held themselves out as married for over twenty-one years, notwithstanding Carol's failure to tell the children about the marriage for ten years, and the fact that she expressed, at least to the children, questions about its validity. Carol also obtained the benefits of marriage during that time.

As this case makes clear, the intestacy statute is designed in part to protect the spouse of a person who has not written a will.[8] A married person is entitled to the spouse's intestate share. The statute thus provides the kind of benefit of marriage that Carol herself would have been estopped from attempting to deny to Ethan through a challenge to the validity of their marriage. See *Poor* v. *Poor*, 381 Mass. 392, 396 (1980) (individual who has obtained benefits of marriage is estopped from later denying that marriage to his putative spouse's detriment). And, much as the brother in *Suneson* was estopped from challenging the validity of his brother's marriage, see *Suneson, supra* at 940-941, so the children here are estopped from challenging the validity of their mother's marriage. See Restatement (Second) Conflict of Laws § 74 comment b, at 226 ("a person may be estopped from attacking a divorce if his claim is derived from a person who would have been estopped. So a child of a first marriage whose father has procured an invalid divorce may be held estopped from attacking the validity of the divorce in order to prevent a second wife from sharing in the father's estate"). The judgment in the administration case is therefore reversed.

---

[8]See G. L. c. 190, § 1, for the version in effect during the relevant time period of this case. That statute was repealed effective March 31, 2012, see St. 2008, c. 521, § 13, amended by St. 2010, c. 409, § 23, and St. 2011, c. 224, and replaced by G. L. c. 190B, § 2-102, inserted by St. 2008, c. 521, § 9.

It does not necessarily follow that the judgment in the equity case must also be reversed. Whether our decision preventing the children from challenging the validity of the marriage, and reversing the judgment revoking and amending the decree appointing Ethan administrator of Carol's estate, undoes the injustice of the children's enrichment by the $120,036 is a question that must be decided in the first instance by the judge. While we express no opinion on the question, we note that it may be informed, for example, by a determination whether and in what way Ethan was hurt by the sale of the cottage to a stranger, which the parties have represented to us has now occurred, in which he cannot now have a life estate, should he have been entitled to one; or by a comparison of the amount he may receive from the sale of the cottage with the value of the life estate that he understood Carol to have wanted him to have. In addition, the judge found that the enrichment of the children was unjust because Ethan made mistakes of fact both when he believed the children considered him to be Carol's husband and when he believed they would follow through, as he had by giving them the $120,036, with Carol's wishes. Our reversal in the administration case may remove the practical consequences of the first mistake, but not of the second. In all events, the judge, whose decision in the equity case demonstrated commendable sensitivity to the equities of the issue, will have to make a new determination on the complaint in equity in light of our decision, and he is free to determine in the first instance what factors are relevant to that determination.

The judgment in the administration case, no. 11-P-2118, is reversed; the judgment in the equity case, no. 11-P-2173, is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*