## Commonwealth ex rel. Wenz *v.* Wenz, Appellant.

594

Argued March 23, 1961. Before ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WOODSIDE, J., absent).

*Paul A. McGinley,* with him *Leonard Rapoport,* and *Groman & Rapoport,* for appellant.

*E. G. Scoblionko,* with him *Scoblionko, Frank & Malkames,* for appellee.

OPINION BY WATKINS, J., June 15, 1961:

This is an appeal from an order of the Court of Quarter Sessions of Lehigh County directing the defendant, Earl Wenz, to pay $25 per week for the support of his wife, the prosecutrix, Juanita M. Wenz, pursuant to a prosecution brought under §733 of the Act of June 24, 1939, P. L. 872, 18 PS §4733.

The defendant, Earl Wenz and Florentia Wenz, were married on June 30, 1921. He unsuccessfully brought a divorce action against her in Lehigh County

in 1933. He obtained a divorce from her in Butler County, Ohio, on January 12, 1942. On November 7, 1942 he married the prosecutrix in Westminster, Maryland. They had been keeping company since 1932 and living together since 1938. They cohabited at various addresses in Berks and Lehigh Counties until March 18, 1959, at which time the prosecutrix was ejected from the common domicile at the direction of the defendant. Florentia Wenz obtained a decree of divorce from the defendant in the Court of Common Pleas of Lehigh County on August 12, 1958. Subsequent to the eviction, this prosecution was brought and after extensive hearings the order was made upon which the appeal is based. The defendant also filed a petition for a supersedeas which is herewith denied.

The defendant denies that he was her lawful husband and contends that he is not responsible for her support. He argues that the decree of divorce secured in Ohio is invalid in that he was never a resident of that state and his first wife, a resident of Allentown, was never served with any notice of the proceeding. Because of the invalidity of the divorce he was not legally competent to enter into the marriage with the prosecutrix in Maryland.

The relation of the parties to the proceeding was meretricious from its inception until the Maryland marriage. The prosecutrix, although she repeatedly requested the defendant to secure a divorce, claims she did not participate in securing the Ohio divorce and the record indicates that at the time of the marriage in November, 1942, both parties, and particularly the prosecutrix, were satisfied with the legality of the Ohio divorce and of the propriety of their marriage.

The defendant testified that he had not lived in Ohio at all; that he was only there three days prior to the commencement of the action; and that his residence was always in Lehigh County. He said the Ohio

divorce was the idea of the prosecutrix and that no notice was given to Florentia Wenz. He also testified that the Ohio residence sworn to in the application for a marriage license in Maryland was the judgment of the prosecutrix.

The prosecutrix testified that he told her that he had maintained a residence in Ohio for six weeks. She denied that the Ohio divorce was her idea but admitted that she had pressed him to get a divorce. She admitted a business visit with the defendant to Ohio but denied that it had anything to do with the divorce; and that the affidavit as to residence in Ohio at the time of the Maryland marriage was his suggestion.

Florentia Wenz testified that she had no notice of the divorce and no knowledge of it but the court below observed that she also testified that support was paid her by the defendant until 1945. The court below commented "Could it be because she, at that time, recognized the validity of the Ohio decree?" She never complained thereafter when payment of the support order ceased.

There were many points of conflict in the testimony given by the litigants and their witnesses and credibility became an important factor. All the witnesses on behalf of the defendant were either employees of the company which he controlled or were financially interested in the outcome of the case. The court below found defendant unworthy of belief.

The hearing judge had the following to say concerning the defendant's credibility: "According to the defendant's testimony in this proceeding, he committed perjury in the petition instituting a divorce action in Ohio when he swore that he was a bona-fide resident for more than a year. He says he knew the whereabouts of Florentia Wenz when he took an affidavit to the contrary. He says he committed perjury when he applied for a marriage license in Maryland by indi-

cating his address as Hamilton, Ohio. In this proceeding he admitted sexual relations with the prosecutrix during 1933, yet on April 10, 1934 in his divorce action against Florentia Wenz he swore that he had not committed adultery at any time during his married life. In his Ohio petition, he swore that the date of separation of the parties was May 25, 1934. In his local divorce action, he testified that the date was June 22, 1933. When, we ask, did the defendant tell the truth? In which court and in which state did he regard the sanctity of an oath? Was it when he was legalizing his relationship with the prosecutrix with whom he had consorted since 1931 and with whom he had lived since 1932 or 1933? Or was it in his proceeding when the defendant is being asked to support the prosecutrix? As the trier of facts, we conclude that the defendant is not a credible witness . . . ."

The full faith and credit clause of the Federal Constitution, Art. IV, §1, requires Pennsylvania courts to assume that the husband who obtained a divorce in another state had a bona fide domicile in that state. The burden is upon the party attacking the decree to show by a preponderance of the evidence that jurisdiction was in fact lacking. The courts, under the full faith and credit clause, are limited to this inquiry as to jurisdiction. *Com. ex rel. Lorusso v. Lorusso,* 189 Pa. Superior Ct. 403, 150 A. 2d 370 (1959). We must accord prima facie validity to the Ohio decree. The burden is on the defendant to show by a preponderance of the evidence that he was not in fact domiciled in the state granting the divorce.

The question is raised whether the one who obtains the divorce may collaterally attack its validity? The defendant, in contending that he may attack collaterally the decree he obtained in Ohio, relies heavily on the case of *Com. ex rel. Allison v. Allison,* 151 Pa. Superior Ct. 369, 30 A. 2d 365 (1943), which was a case

of a married man and a single girl going to Mexico and in one day securing a divorce and then being married. The woman brought suit for support as in this case and the court held he could attack the Mexican divorce decree and so avoid support of the alleged second wife. This Court said: "We do not mean to repudiate the general doctrine that the validity of a divorce decree cannot be questioned by the spouse who obtains it. Restatement, Conflict of Laws, §112. We limit ourselves to a holding that in a proceeding under Section 733 of The Penal Code it may be questioned by the husband who procures the invalid decree, particularly where the relatrix participated in the procurement to the extent here shown."

Section 112, Restatement, Conflict of Laws, reads as follows: "The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by a spouse who has obtained such decree of divorce from a court which had no jurisdiction, or by a spouse who takes advantage of such decree by remarrying."

The examples cited and the cases in which the doctrine has been invoked involve a situation where the rights or interest of third parties have arisen which would be affected by the condition of the marital relationship. By the same token, would not an innocent party, who marries the procurer of such a divorce in reliance upon it, have such a right or interest in the condition of the prior marital status? In such a case the general doctrine, that the validity of a divorce decree cannot be questioned by the spouse who obtains it, would apply.

While in this case we are faced with the full faith and credit clause, which was not involved in the *Allison* case, supra, this does not restrict the courts from inquiring into the jurisdictional facts upon which a foreign divorce is founded. And even if we were to

decide that this husband could attack the validity of the divorce he procured on the theory of the *Allison* case, in that this prosecutrix was not before the court with clean hands, having participated in its procurement, so that the equitable doctrine of estoppel would not apply, the defendant still had the burden of establishing the lack of jurisdiction by a preponderance of the evidence.

For the disposition of this question as to whether the burden was sustained we are constrained to adopt the conclusion of the court below who had the opportunity to hear and observe the witnesses and concluded: ". . . and when we examine the proof submitted to attack the Ohio divorce decree without full reliance on his testimony, we find that he has not proved his defense by a fair preponderance of the evidence. We are reminded again that preponderance of the evidence is a qualitative rather than a quantitive term. . . . The proof submitted should be clear, satisfactory and credible. There is no corroboration in this case on the very fundamental question as to whether the defendant was in fact domiciled in Ohio or whether in fact he was a resident of Pennsylvania all along. An attack on the divorce decree of a sister state should not be sustained on flimsy proof in view of the interest of the state in the marriage relationship. To agree that the Ohio decree is invalid is to create an impediment in the Maryland marriage."

However, if we were to disagree with the resolution of the court below as to credibility and hold that the defendant had sustained his burden and the divorce decree was invalid in that Ohio did not have jurisdiction because of lack of bona fide residence and notice, the order of support can be sustained under the marriage law of 1953, P. L. 1344, §17, 48 PS §1-17, which reads as follows: "If a person, during the lifetime of a husband or wife with whom a marriage is in force,

enters into a subsequent marriage pursuant to the requirements of this act, and the parties thereto live together thereafter as husband and wife, and such subsequent marriage was entered into by one or both of the parties in good faith in the full belief that the former husband or wife was dead, or that the former marriage has been annulled or terminated by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by death of the other party to the former marriage, or by annulment or divorce, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and immediately after the removal of such impediment."

This act was intended to apply and affect all residents of this Commonwealth, including the parties to this proceeding. The phrase "pursuant to the requirements of this act" does not mean only those parties married in Pennsylvania in strict compliance with our legal requirements but all residents of the Commonwealth regardless of where married, if the marriage substantially conforms to the requirements of the act, which included a specific recognition in §23 of the validity of a common law marriage. Whether or not the marriage in Maryland was strictly legal, under the laws of that state, is not then in question.

There seems to be no doubt that, at least, the prosecutrix at the time of the Maryland marriage, assumed the legality of the Ohio decree and exercised good faith in her desire for matrimony. The test propounded by Freedman, Law of Marriage and Divorce, Sec. Ed., at page 145, as to what constitutes good faith under the act, is a bona fide desire for marriage. The facts of this case satisfy all the requirements of the act, including their living together, in good faith, as man and wife after the decree of divorce obtained by the

defendant's first wife on August 12, 1958, had removed the impediment to their marriage.

Order affirmed.