579 A.2d 377

**Beverly LOWENSCHUSS, Appellant,**

v.

**Fred LOWENSCHUSS, Appellee.**

**Beverly LOWENSCHUSS, Appellee,**

v.

**Fred LOWENSCHUSS, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 18, 1990.

Filed July 9, 1990.

Reargument Denied Sept. 11, 1990.

532

Albert Momjian, Philadelphia, for appellant (at 1001) and for appellee (at 1195).

Arthur Lefkoe, Norristown, for appellant (at 1195) and for appellee (at 1001).

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

BECK, Judge:

This case requires us to decide the circumstances under which a spouse may be estopped from asserting the invalidity of the other spouse's prior foreign divorce. Appellant wife argues that husband is estopped from asserting the invalidity of her 1964 Alabama divorce. We agree.

The parties entered a ceremonial marriage in 1965. At the time of the marriage husband, an experienced attorney, knew that wife had obtained an Alabama divorce from her previous spouse even though she had never lived there. For at least nine and possibly for as long as seventeen years the parties cohabited as man and wife. They had four children. In 1974, husband contends he first became fully aware of the invalidity of wife's Alabama divorce. In 1981, wife instituted an action in divorce. Husband defended the action on the ground that no valid marriage between the parties exists because of the invalidity of wife's prior divorce. The trial court agreed and dismissed the action.

We begin our analysis with a detailed recitation of the facts as they emerge from the voluminous record in this action. In 1959, appellant Beverly Lowenschuss ("wife") married Elliot Bender. The marriage was not successful. In June 1964, wife travelled to Alabama to procure a divorce from Mr. Bender. She did so with Mr. Bender's consent. Alabama was chosen as the forum for the divorce pursuant to advice from wife's then attorney, Mr. Edelstein, who put her in touch with an Alabama attorney. Wife spent at most two days in Alabama and does not dispute the fact that she has never been a bona fide resident of Alabama. Wife concedes that she misrepresented that she was a resident of that state in the documents she filed to procure the divorce. The day after wife returned from

Alabama, the Circuit Court of Winston County, Alabama entered a divorce decree divorcing her from Elliot Bender.

The trial court made no specific finding as to what wife knew concerning the validity of her divorce from Mr. Bender or the effect of the divorce on her marriage to husband. Wife testified as follows on this subject:

> I went to Alabama to obtain a divorce on the instructions of my attorneys, reputable and ethical people, who told me that this is the way one obtains a divorce. My husband at that time was also represented by [an] ethical, respected member of the Bar. If those people told me that this is the way I obtain a divorce, then it was—I was not an attorney at the time. I was 25 years of age, not totally sophisticated, although I was an English teacher. I signed this [the false statement of residency] because that's—those were the instructions both from by husband's lawyer and the lawyer whom I met in Alabama. I had never been in a Courtroom in my life up until then. I had never been before a Judge in my life before then. I had never met with lawyers before then and I was quite unsophisticated in the way of the law.

The trial court found only that wife had misrepresented her residency in the documents filed to obtain the Alabama divorce, that Mr. Edelstein did not counsel her to do so and that wife now concedes the resulting invalidity of that divorce. The court made no finding as to whether at the time of the divorce wife knew that the result of her false oath of residency would be that the divorce would not receive recognition in this Commonwealth and that it would be an impediment to her later marriage to husband.

Five months later wife met appellee Fred Lowenschuss ("husband") and they began dating. Husband knew that wife was divorced, but denies knowing any of the details concerning how the divorce was procured. However, husband does admit to having seen the Alabama divorce decree prior to marrying wife and also admits that, prior to the marriage, he knew that wife had never resided in Alabama. Wife and Mr. Edelstein, the attorney who helped her pro-

cure the Alabama divorce, both testified that husband had also discussed the divorce with Mr. Edelstein prior to marrying wife and questioned Mr. Edelstein as to the validity of the divorce. Mr. Edelstein testified that he assured husband at that time that the divorce was proper.[1]

The parties were married in December 1965. Within two years they started a family and eventually had four children. However, the marriage was unhappy and, in 1974, husband commenced a divorce action. Shortly after commencing this action, husband withdrew it. Husband testified and the trial court found that his reason for withdrawing the action was that after he had filed it he discovered that wife's divorce from Mr. Bender was void because the Alabama court had never had jurisdiction to grant the divorce. Thus, husband testified that he withdrew the divorce action because as a member of the bar of this Commonwealth he did not feel he could ethically continue with it. However, husband also admitted that the parties had reconciled their differences at that time. Both wife and the attorney who represented her in the 1974 action testified that to their knowledge, husband withdrew the action *solely* because the parties had reconciled.

Husband also testified that in 1974 he informed wife that they were not married because her prior divorce was invalid and that although they could continue to live together, he did not consider them married. Wife denied this assertion. The trial court, however, accepted husband's testimony on this point. The trial court found further support for the conclusion that husband did not consider himself married after 1974 in the fact that after that time, husband filed his tax returns as a single head of household instead of filing a joint return with wife as he had previously done. Finally, the trial court found that after 1974, husband did not introduce or refer to wife as "his wife".

The trial court did not specifically find any other facts concerning husband's conduct toward wife following his

1. Husband testified that although he was not sure, he did not think he recalled this discussion. The trial court credited Mr. Edelstein and wife on this point.

withdrawal of his 1974 divorce action. However, we note that the testimony of husband concerning this reveals the following:

[Wife's counsel]: Now, after you, as you testified, decided to withdraw your complaint for divorce in October of 1974 and do the best you could to keep the family together, did you thereafter hold yourself out, nonetheless, to people in the community as husband and wife?

[Husband]: We continued to live the same as we did previously.

[Wife's counsel]: Did you, Mr. Lowenschuss—

[Court]: Can we answer the question?

[Husband]: Well, Your Honor, that's the answer. I mean, I didn't tell anybody we weren't married other than maybe a close friend of mine. We continued to live the same way as we did before, Your Honor.

[Court]: That doesn't answer the question. I don't know whether before you held yourself out to be husband and wife.

[Husband]: We did hold ourselves out as husband and wife before, Your Honor.

[Court]: Before. Okay. Then you did hold yourself out as husband and wife afterward.

[Husband]: We, we continued the same way. I didn't tell anybody that, by the way, she's the legal wife of Elliot Bender other than maybe a close friend or two and my associate in the office and so on. It's not the kind of thing that you brag about.

. . . . .

[Wife's counsel]: Mr. Lowenschuss, in the transcript of custody proceedings before His Honor, Judge Tredinnick, on June 28, 1983, at Page 244, you admitted that you held Beverly out as your wife after 1974, did you not?

[Husband]: I explained to you I did the same thing afterwards as before.

[Wife's counsel]: So can I get it with a little more clarity? You held her out as your wife before 1974?

[Husband]: Yes.

[Wife's counsel]: And is it not, then, correct that you held her out as your wife after October, 1974?

[Husband]: We continued to live the same way as before.

Husband further testified that after 1974 he continued to want to have more children with wife and did not wish to seek an annulment because he wanted to keep the family unit together.

Wife countered husband's evidence concerning whether he considered them married and conducted himself as a married man after 1974 with evidence consisting of various greeting cards exchanged between the parties as married persons, testimony about various trips they took as married persons and the testimony of friends who considered them married.

The trial court's analysis of the legal ramifications of this situation was straightforward. The court found that wife's Alabama divorce was void because the Alabama court lacked jurisdiction to grant the divorce. The court further found that the parties did not cure this defect by consenting to the jurisdiction of the Alabama court since Alabama law did not permit divorce by consent. Reasoning from this conclusion, the court found that husband and wife's Pennsylvania marriage was void under Section 204(a) of the Divorce Code, which states:

(a) Where there has been no confirmation by cohabitation following the removal of an impediment, the supposed or alleged marriage of any person shall be deemed void in the following cases:

(1) Where either party at the time of such marriage had an existing spouse and the former marriage had not been annulled nor had there been a divorce, except where such person had obtained a decree of presumed death of the former spouse.

Pa.Stat.Ann. tit. 23, § 204(a)(1) (Purdon Supp.1989).

Thus, the court concluded that since there was no marriage *res* the court had no subject matter jurisdiction to

grant a divorce to wife and, therefore, her complaint in divorce must be dismissed.[2]

**2.** We disagree with this conclusion. The Divorce Code provides, in Section 301, that the common pleas courts of this Commonwealth have original jurisdiction in cases of divorce. Section 302 further provides that this jurisdiction is present where one spouse has been a bona fide resident of the Commonwealth for at least six months immediately previous to the filing of the divorce complaint, such residency creating a presumption of domicile in the Commonwealth. Pa.Stat.Ann. tit. 23, §§ 301, 302 (Purdon Supp.1989). Moreover, subject matter jurisdiction has been generally defined as the power of the court to hear cases of the class to which the case before the court belongs, that is, to enter into the inquiry, whether or not the court may ultimately grant the relief requested. *Commonwealth v. Court of Common Pleas of Philadelphia County,* 506 Pa. 410, 485 A.2d 755 (1984).

In fact, the opinions of this court in prior appeals taken by husband from various orders entered by the trial court in the course of this divorce action reveal that husband has repeatedly contended that the trial court had no jurisdiction over the action and that these contentions have been rejected. *See, e.g., Lowenschuss v. Selnick,* 324 Pa.Super. 193, 471 A.2d 529 (1984); *Lowenschuss v. Lowenschuss,* 327 Pa.Super. 120, 475 A.2d 127 (1984). In both prior appeals, panels of this court have concluded that the trial court was validly exercising jurisdiction over the divorce action and that the exercise of jurisdiction was with statutory authority. *Id.*

Thus, it is clear that the trial court initially had subject matter jurisdiction in this divorce action. If in the course of such an action it becomes necessary for the court to determine the parties' marital status, then the court has the power to do so. If the court decides that no valid marriage exists, then the divorce complaint must be dismissed because, although the court has jurisdiction over the divorce action, it cannot grant the relief requested because it has determined that there is no marriage to dissolve. If, however, the court decides that a valid marriage does exist, or decides that the party challenging the marriage is estopped, then the court clearly has the jurisdiction to proceed to divorce the parties and decide all related issues.

As the Superior Court of Connecticut has aptly stated in considering a similar issue:

> ... if the jurisdictional question were determined at this point, it should be determined in favor of the plaintiff [i.e. of finding that jurisdiction does exist] so long as there is a colorable marriage res or *status to which jurisdiction might attach.* This would be especially pertinent if the court were later to decide that the marriage is not open to collateral attack by this defendant. In this regard it is clear that even if the defendant can collaterally attack the ... divorce some parties may be prohibited from attacking it. Thus, to some extent there is an existing status or res to which jurisdiction can attach.

The first issue is not whether the marriage is void, but rather, whether it can be collaterally attacked.

The court then proceeded very briefly to analyze and reject wife's argument that, even conceding the invalidity of her Alabama divorce and the effect that would have on her marriage to husband, nevertheless husband was equitably estopped from raising this impediment to their marriage as a defense to this divorce action. The trial court's analysis of this issue was as follows:

Plaintiff [wife] raises the issue that Defendant is *estopped* from challenging the validity of the Alabama Divorce Decree. None of the requirements of equitable estoppel on the part of defendant are present in this case. In Haines v. Haines, 115 Montg.Co.L.R. 52 (1984) the Court (Lowe, P.J.) held that the doctrine of equitable estoppel could not be invoked against a purported husband to prevent him from asserting the invalidity of the marriage, even if he knew of the prior husband. The Court stated:

"The elements of equitable estoppel are:

(1) misleading words, conduct, or silence by the party against whom the estoppel is asserted;

(2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel;

(3) no duty of inquiry on the party seeking to assert the estoppel.

*Divine Providence Hospital v. Commonwealth, Department of Public Welfare,* 76 Pa. Commonwealth Ct. 188, 191, 192 [463 A.2d 118] (1983).

'An estoppel may be claimed by one who has acted in ignorance of the true state of fact and who was without means of informing himself of their existence.' Id., 192 [463 A.2d 118], quoting *Livingston v. Livingston,* 275 Pa.Superior Ct. 285, 293 [418 A.2d 724] (1980). However, *'if both parties knew the truth, or have equal access to the truth, there can be no estoppel.'* (emphasis added). As recognized by this Court in the Haines case, supra, there can be no equitable estoppel against the defendant,

*Murphy v. Murphy,* 34 Conn.Super. 251, 254, 386 A.2d 274, 276 (1978).

because the plaintiff herself *"was fully appraised of the situation which she herself had created."* The plaintiff cannot escape this crucial fact, regardless of what, if anything, defendant knew about the circumstances of the Alabama divorce at the time of the purported marriage ceremony in 1965.

Trial court opinion, at 12–13.

We find this analysis misguided. Initially, we find that the trial court erred in first considering whether wife's Alabama divorce was valid and, thus, whether the parties' marriage was valid. Rather, the proper approach is first to consider whether husband is estopped from raising the issue of the validity of his wife's prior divorce and of their present marriage. This is so because if he is estopped, the inquiry is at end since no other impediment to the parties' marriage has been raised.

Thus, we begin with the estoppel issue. We find that Pennsylvania law has long recognized a genre of estoppel that is materially different from classic equitable estoppel and that clearly merits consideration in the context of this case. The trial court erred in confining its analysis to classic equitable estoppel and in ignoring the principles of Pennsylvania law that lend support to wife's estoppel argument.

■ The estoppel doctrine of relevance to this case is set forth in Section 74 of the Restatement (Second) Conflict of Laws, which states:

[a] person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so.

Comment (b) to Section 74 further explains that this type of estoppel is:

... not limited to situations of "true estoppel" where one party induces another to rely to his damage upon certain representations. The rule may be applied whenever, under all the circumstances, it would be inequitable to permit a particular person to challenge the validity of a

divorce decree. Such inequity may exist when action has been taken in reliance on the divorce or expectations are based on it or when the attack on the divorce is inconsistent with the earlier conduct of the attacking party.

This form of estoppel, peculiarly applicable to matrimonial actions, is unlike classic equitable estoppel in that it does not focus solely on whether one party has made a misrepresentation on which the other has reasonably relied. The focus is broader and requires a consideration of all of the circumstances surrounding not only the procurement of the divorce, but also the conduct of the parties thereafter and the effect of a declaration of the invalidity of the divorce on others. One noted matrimonial scholar has described the various circumstances in which this estoppel principle may operate as follows:

> The estoppel under discussion here, however, is an equity principle dependent upon events which may have occurred after the divorce was granted or apart from the divorce action. It is not a function of the decree but a personal disability of the party attacking the decree. It is not a rule of jurisdiction. Therefore its application is not governed by the Full Faith and Credit Clause.
>
> Under what circumstances then will courts invoke or refuse to invoke estoppel?....
>
> The circumstance which most obviously calls for application of the estoppel theory is that the divorce was obtained by the very party attempting to attack it.
>
> . . . .
>
> Estoppel may also rest upon acts or events occurring after the divorce in question. A long acquiescence in the divorce with knowledge of its jurisdictional defect will often foreclose an attack, whether the rationale of the defense is labeled estoppel or laches.
>
> . . . .
>
> Acceptance of benefits, usually alimony, under the divorce has the same consequence. Remarriage after the

defective decree, either by the person attacking it, or by the other party, will usually raise an estoppel, as will reliance upon the decree by innocent third parties.

H. Clark, *Law of Domestic Relations*, § 13.3 at 734–37 (1987) (footnotes omitted).

A review of Pennsylvania case law reveals that equitable estoppel principles have been considered and often applied by Pennsylvania courts for decades in a wide variety of cases involving attacks on invalid divorces. *See Diamond v. Diamond*, 501 Pa. 418, 461 A.2d 1227 (1983); *In re Romanski Estate*, 354 Pa. 261, 47 A.2d 233 (1946); *Rosen v. Sitner*, 274 Pa.Super. 445, 418 A.2d 490 (1980); *Sargent v. Sargent*, 225 Pa.Super. 1, 307 A.2d 353 (1973); *Commonwealth ex rel. Bortin v. Bortin*, 210 Pa.Super. 355, 234 A.2d 55 (1967); *Commonwealth v. Case*, 200 Pa.Super. 200, 189 A.2d 756 (1963); *Commonwealth ex rel. Wenz v. Wenz*, 195 Pa.Super. 593, 171 A.2d 529 (1961); *DeRosay v. DeRosay*, 162 Pa.Super. 333, 57 A.2d 685 (1948); *Commonwealth ex rel. Allison v. Allison*, 151 Pa.Super. 369, 30 A.2d 365 (1943).

Largely these cases arose from actions by a dependent spouse for support or actions in annulment. Most commonly they involved situations where a spouse, who had procured an invalid divorce from a prior spouse, sought to avoid an obligation of support to his present spouse or sought to annul his present marriage by asserting the invalidity of his own prior divorce. For example, in *Commonwealth ex rel. Wenz v. Wenz*, *supra*, wife sought support from her husband, from whom she was separated. Husband defended by stating that he and wife were not married because his divorce from his former wife, which he had procured, was invalid. The court granted wife support, holding, *inter alia*, that husband was estopped from asserting the invalidity of his prior divorce on which *both* husband and wife had relied in getting married. *See also Commonwealth v. Case*, *supra*.

In the recent case of *Diamond v. Diamond*, *supra*, the Pennsylvania Supreme Court applied the doctrine of es-

topped to estop a party from attacking an invalid divorce which he had procured. There, husband attempted to obtain an annulment of his marriage to wife by asserting that his Alabama divorce from his prior wife was invalid because he had falsely sworn that he was an Alabama resident in order to obtain the divorce.[3] The *Diamond* court carefully reviewed all of the circumstances surrounding husband's procurement of the divorce and the events occurring subsequent to the divorce. The court stressed that husband, his former wife and his present wife had all believed the divorce to be valid and had relied on it in remarrying. Moreover, the court pointed out that husband had waited over ten years before attempting to attack the divorce. Then, citing Section 74 of the Restatement (Second) Conflict of Laws, the court held that it would be inequitable under all the circumstances to allow husband to annul his present marriage on the basis of the prior divorce.

Thus, there is no question as to the acceptance in Pennsylvania law of Section 74 estoppel in matrimonial actions where the spouse who seeks to attack an invalid divorce is the very person who procured it. However, of even greater significance to the present case is the fact that this doctrine of estoppel has also been applied to estop an attack on a prior divorce by a third party who was in no way involved in procuring the invalid divorce. This application of the estoppel principle is found in *Rosen v. Sitner, supra.* In *Rosen,* Gloria and Arthur Sitner were married in 1950 and separated several years later. In 1963, Gloria went to Mexico and procured a divorce from Arthur. Several months later, Gloria began dating Marvin Rosen, who she married in 1970. They lived together until 1977, when Marvin left Gloria and filed an annulment action on the ground that Gloria's divorce from Arthur had been invalid. *Rosen,* 274

---

**3.** Interestingly, the same Alabama judge who granted Mr. Diamond his divorce also granted the divorce to wife in the instant case. As the *Diamond* court noted, that judge was later convicted of conspiracy to defraud by use of the mails for fraudulently representing to out-of-state residents that they could obtain *valid* Alabama divorces. *Diamond,* 501 Pa. at 419–22 n. 1, 461 A.2d at 1227–28 n. 1.

Pa.Super. at 447, 418 A.2d at 491. The trial court dismissed the annulment action.

The Superior Court affirmed the trial court. The court specifically relied on Section 74 estoppel in finding that Marvin was estopped from attacking Gloria's divorce from Arthur, even though Marvin had not participated in procuring the divorce. The court stated that the following considerations were relevant to its holding:

> We are ... of the opinion that appellant [Marvin] is now estopped from challenging the validity of the Mexican decree. Having taken advantage of the divorce in order to marry appellee [Gloria] and having cohabited for seven years, appellant will not now be heard to assert that the decree was invalid.

> . . . .

> Those decisions which have held third persons estopped have relied upon the particular facts and circumstances involved rather than on a settled rule or a definitive policy. In determining whether estoppel is applicable, factors considered have included the parties, the effect of the decision on other individuals, the nature of the rights sought to be vindicated, public policy, and prior judicial declarations.

> In determining whether it would be inequitable to allow an attack on the foreign decree in this case, the following facts appear. At the time of the marriage, both Marvin Rosen and Gloria Rosen knew that the other had previously been divorced. They had discussed their divorces, and appellant knew specifically that his wife's divorce had been procured in Mexico. In fact, when the couple applied for a marriage license in New Jersey, copies of their final divorce decrees had been displayed. In marrying, they accepted each other as unmarried persons, fully competent to enter a contract of marriage. At no time prior to separation did appellant question the validity of appellee's divorce. He cohabited with appellee for seven years, and at all times held her out to be his wife. Not

until appellee had instituted an action for support did appellant raise for the first time the issue of the alleged invalidity of the decree, terminating appellee's prior marriage. Under these circumstances, we conclude that it would have been inequitable to have permitted appellant to assert invalidity of the divorce in an attempt to escape the obligations of his marriage.

*Id.*, 274 Pa.Superior Ct. at 450–51, 418 A.2d at 492–93 (citations omitted).[4]

The decision in *Rosen* is clearly consistent with the present day policy of this Commonwealth toward divorce and the role of equitable doctrines in such cases. The revolution in our divorce law signalled by the enactment of the Divorce Code was born of a recognition that no useful purpose is served by refusing to recognize the end of a marriage and that the focus should be on achieving equity between the divorcing parties. The Divorce Code is replete with references to the expanded equitable powers of the court presiding over such actions. *See, e.g.,* Pa.Stat.Ann. tit. 23, § 401(c) (Purdon Supp.1989). Thus, application of the doctrine of equitable estoppel set forth in Section 74 of the Restatement to estop a spouse from attacking the other spouse's prior foreign divorce, on which both parties relied in getting married, where a consideration of all of the circumstances and of the expectations of all of the parties involved support such a decision, is perfectly appropriate under the Code.

Moreover, the *Rosen* decision is certainly no anomaly in the law of estoppel. Rather, there are numerous decisions where the courts of other jurisdictions have also held that under all of the circumstances, a third party (usually a second spouse of the divorced person) should be estopped from challenging the validity of a foreign divorce. *See, e.g., Mussey v. Mussey,* 251 Ala. 439, 37 So.2d 921 (1948); *Diet-*

---

**4.** *Rosen* is pertinent to the instant case despite the fact that in *Rosen,* the court ultimately viewed the wife's Mexican divorce as entitled to full faith and credit under New York law, the state where the parties had married. The court's discussion of the estoppel issue clearly reveals that the court would consider husband estopped from challenging wife's Mexican divorce, even if it were to be held invalid and not entitled to recognition.

*rich v. Dietrich,* 41 Cal.2d 497, 261 P.2d 269 (1953), *cert. denied,* 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954); *Fattibene v. Fattibene,* 183 Conn. 433, 441 A.2d 3 (1981); *Murphy v. Murphy,* 34 Conn.Super. 251, 386 A.2d 274 (1978); *Goodloe v. Hawk,* 113 F.2d 753 (D.C.Cir.1940); *In re Marriage of Winegard,* 278 N.W.2d 505 (Iowa), *cert. denied,* 444 U.S. 951, 100 S.Ct. 425, 62 L.Ed.2d 321 (1979); *Leatherbury v. Leatherbury,* 233 Md. 344, 196 A.2d 883 (1964); *Poor v. Poor,* 381 Mass. 392, 409 N.E.2d 758 (1980); *Zirkalos v. Zirkalos,* 326 Mich. 420, 40 N.W.2d 313 (1949); *Merino v. Merino,* 56 Misc.2d 854, 290 N.Y.S.2d 462 (1968); *Mayer v. Mayer,* 66 N.C.App. 522, 311 S.E.2d 659 (1984).

Although in some of these cases the party attempting to challenge the foreign divorce decree was estopped from doing so because he had been involved in procuring it, in others the party was estopped *despite* the fact that he was *not* aware of the defect in the divorce at the time of his marriage to the divorced party and only learned of the defect sometime much later. For example, in *Poor v. Poor, supra,* the Supreme Judicial Court of Massachusetts considered whether a husband of a woman who had procured an invalid Haitian divorce from her prior husband could obtain an annulment of his marriage by attacking his wife's Haitian divorce. The facts clearly revealed that the husband had no involvement in procuring the divorce and had innocently and in good faith relied on it in marrying wife. In fact, he had examined wife's Haitian divorce papers prior to his marriage and felt that the divorce was valid. Wife also believed that her divorce was valid. *Poor,* 381 Mass. at 393, 409 N.E.2d at 760.

The *Poor* court held that although the facts of the case did not support invocation of classic estoppel, since husband had made no representation to wife on which she had reasonably relied, nevertheless sound policy considerations supported estopping husband from attacking the Haitian divorce. Finding that both parties had in good faith relied on the validity of the divorce and that husband's attempt to attack it was inconsistent with his prior conduct, the court

held that husband was estopped from challenging the divorce. This holding, noted the *Poor* court, "permits the [trial] judge to consider fully issues of separate support, alimony, and the division of property in the course of probate proceedings for divorce, custody or separate support." *Id.* at 396, 409 N.E.2d at 761. *See also Zirkalos v. Zirkalos, supra.*

 We see no relevant distinction between these cases and the one presented for decision today. We recognize that in the instant case the trial court found husband's version of the facts credible and disbelieved much if not all of wife's testimony concerning the validity of their marriage. We also recognize that we are bound by the factual findings of the trial court if they are supported by competent evidence of record. Yet we find that even accepting the facts as the trial court found them, a proper application of the law of Section 74 estoppel requires that we reverse the trial court's dismissal of wife's complaint in divorce. The trial court's insistence on analyzing this case solely under traditional principles of equitable estoppel led it to focus solely on such questions as whether husband made a representation to wife on which she reasonably relied, rather than conducting a broad review of all of the circumstances, as is mandated by Section 74 estoppel. Thus, the trial court's refusal to apply the proper estoppel theory led it to accord great legal significance to certain facts while ignoring other facts which are clearly relevant to the proper disposition of this case.

The foregoing legal discussion demonstrates that the fact that wife's Alabama divorce may well be invalid and that she misrepresented her residency in order to obtain it is not controlling. It is also irrelevant that in 1974 husband allegedly "discovered" that the divorce might be invalid, told wife of his revelation and thereafter *privately* considered himself unmarried. None of this in any way affects the fact that both parties relied in good faith on the Alabama divorce in marrying each other in 1965 and continued to rely on that divorce at minimum until 1974. They had

four children and considered themselves a married couple. There is no evidence that wife had any knowledge that her Alabama divorce was invalid and an impediment to a valid Pennsylvania marriage when she married husband. She simply proceeded to Alabama on the advice of her Pennsylvania counsel and did what her Alabama attorney told her to do to obtain an Alabama divorce—not an invalid Alabama divorce, but, as far as she knew and was told by her attorneys, a *valid* Alabama divorce. We note, as we have indicated in footnote 3, *supra*, that the Alabama judge who granted wife her divorce was later convicted of representing to out of state residents that they could obtain *valid* Alabama divorces.

Turning to a review of husband's conduct, we find that there is also no evidence to suggest that husband did not fully satisfy himself that wife's Alabama divorce was proper *before* he married wife. The trial court found, based on competent evidence of record, that husband *did* inquire of wife's Pennsylvania divorce lawyer whether the divorce was valid and was assured that it was. He also saw the divorce decree before his marriage and knew that wife had never resided in Alabama. Despite these inquiries and husband's knowledge of the nature of wife's divorce, husband, then already an experienced attorney, nevertheless proceeded to marry wife and have a family with her.

Insofar as events occurring after the parties' marriage are pertinent, we are completely unpersuaded by husband's protestations concerning his conduct after 1974 when he allegedly first discovered that wife's divorce was invalid. It is of no significance that husband then privately considered himself unmarried and told wife that he did. Husband conducted himself as a married man for nine years before 1974 and after 1974 he continued to live as he had before. He and his wife continued to raise their children together. They continued to travel and socialize together. In fact, this record reveals and the trial court found that after 1974 husband changed only one aspect of his life as a result of

his belief that he was not validly married.[5] He began to file his tax returns as a single head of household. Does this constitute a declaration of husband's single status, binding on this court? Does this alone warrant a holding by this court that these parties were never legally married, that wife is still married to her former husband, who has twice remarried in reliance on this Alabama divorce, and that the parties' four children were born of a meretricious relationship? We think not. Despite whatever husband may have thought about his marital status after 1974, or whatever he may have told wife about their marital status, none of this alters the fact that the parties both continued to live as husband and wife. They continued to conduct themselves as if there was no impediment to their marriage. Husband cannot now contradict his course of conduct prior to 1974 and, largely, his course of conduct after 1974. He cannot be given the right to decide when the parties are to be considered married and when they are not, depending on what suits his personal or economic interest.

No social purpose will be served by a decision that this marriage simply does not exist and that wife is still the legal wife of her first husband and that her four children were born of an illicit relationship. To hold that husband may now raise this challenge simply in order to avoid the financial obligations of his marriage would be grossly inequitable. Such a decision would contravene the strongly entrenched policy of this Commonwealth favoring preservation of the family unit. *See* Pa.Stat.Ann. tit. 23, § 102 (Purdon Supp.1989); *John M. v. Paula T. and Michael T.,* 524 Pa. 306, 571 A.2d 1380 (1990) (Supreme Court reiterates

---

**5.** Husband also contends and the trial court found that husband withdrew his 1974 divorce complaint against wife because he then considered them unmarried. We note that there is no documentary evidence of record showing that the discontinuance of that action was in fact based on this reason. Nevertheless, accepting this explanation for the discontinuance as true, we point out that husband himself admitted that he and wife also reconciled their marital differences in 1974 and both wife and her divorce lawyer at that time testified that this was the sole reason for the discontinuance of the divorce action. Thus, we accord little significance to the discontinuance of the 1974 divorce action or husband's motivations in withdrawing it.

that Commonwealth's interest lies in protecting the family, "the basic and foundational unit of society"; cases involving the principle of "paternity by estoppel" highlight this interest). Moreover, a decision which would allow husband to avoid his marital obligations at this late juncture would be completely inconsistent with the Commonwealth's contemporary attitude toward divorce, which is grounded in the application of equitable principles to achieve economic justice and overall fairness between the parties. *See* discussion at pp. 543–547, 579 A.2d at 383–384 *supra*.

Therefore, we hold that principles of estoppel based on well-established social policies favoring preservation of the family and economic justice require us to estop husband from asserting the invalidity of wife's Alabama divorce.

Having determined that the trial court erred on this central and threshold issue, we now turn to the plethora of other issues raised on appeal. Here we note that both wife and husband have appealed certain other aspects of the trial court's decision. However, we consider it either inappropriate or unnecessary for us to consider certain of wife's and husband's allegations of error in light of our decision concerning the issue of the validity of the parties' marriage. For example, wife has appealed from the award of counsel fees she received, contending that her legal expenses were greatly increased by husband's obstreperous and dilatory conduct throughout this case and that she should have received a higher contribution from husband to defray these expenses. However, we find that it is inappropriate to review this award at this juncture. We have found that the case must now be remanded for prosecution of the divorce action and for equitable distribution. Further legal fees will be incurred in that process. Thus, the present award, which appeared final when this appeal was taken, is now actually only an interim award. As such, it is not subject to immediate review. *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985). It would certainly be a waste of judicial resources for us to review this award now, knowing that the final attorneys' fees award is yet to be made. The interim award

of counsel fees awarded to wife shall be paid, pending ultimate determination of the final award by the trial court and, if sought, appellate review thereof.

We also find it unnecessary to review wife's remaining contention on appeal, namely, that the trial court erred in employing its own handwriting expert to determine whether wife's signature on a certain deed was genuine. Wife contends that the conclusions drawn by this expert, which are very briefly referenced in a footnote to the conclusion of the trial court's lengthy opinion, influenced the trial court to disbelieve wife's testimony. Wife does not specify in her brief exactly which of the trial court's factual determinations may have been influenced by this alleged impropriety. In any event, we find that it does not matter. We have found for wife regarding the major issue presented. The only other issue wife has appealed concerns her award of attorneys' fees, which we have stated must be left for another day. Thus, we need not address wife's claim of error on this ground.

Husband has cross-appealed the trial court's determinations regarding alimony pendente lite, child support and counsel's fees. As to the latter, for the reasons set forth above, we express no opinion. As to the trial court's award of alimony pendente lite, we also find it inappropriate to conduct review. As the case is now to be remanded, we find it inappropriate to conduct interim review of the amount of the alimony pendente lite award. *See Fried v. Fried, supra.* We do conclude, however, that to the extent that husband challenges the alimony pendente lite award on the ground that wife is not entitled to any such award since she is not validly married to husband, his challenge is rejected on the basis of our decision concerning the validity of the marriage.

Lastly, husband has appealed the child support award made by the trial court. Our role in reviewing such an award is narrow. As stated in *Commonwealth ex rel. Leider v. Leider*, 335 Pa.Super. 249, 255, 484 A.2d 117, 120 (1984), "... [o]ur scope of review is limited to a determina-

tion of whether or not the order of support can be sustained on any valid grounds. We must determine whether there was sufficient evidence to sustain the court order or alternatively, whether the court was guilty of an abuse of discretion. A finding of abuse of discretion is not lightly made; but only upon a showing of clear and convincing evidence."

We have reviewed the record concerning this issue and find that the trial court's award was well within its broad discretion. The court's opinion reveals that it did employ the county support guidelines and made its calculation in accordance with the dictates of *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). The court carefully considered all of the circumstances of this family, the needs of the children and, to the best of its ability, the income of the parents in arriving at its child support award. Indeed, in light of the antics of both parties with regard to revealing reliable information concerning their income and assets, the trial court is to be commended for being able to fashion any child support award at all. *See Olson v. Olson,* 384 Pa.Super. 224, 558 A.2d 93 (1989) (where party seeking benefits of *Melzer* formula fails to provide accurate information required for use of formula, he is not entitled to reversal for recalculation in accordance with *Melzer*). We find no error in this aspect of the trial court's decision.

The order of the trial court is reversed insofar as it dismissed wife's complaint in divorce. The trial court's award of child support is affirmed. We express no comment on the alimony pendente lite and counsel fees awards. The matter is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.