**Mary SELL, Appellee,**

v.

**Stephen SELL, Appellant (Two cases).**

Superior Court of Pennsylvania.

Argued Feb. 12, 1998.

Filed July 21, 1998.

Virginia I. Cook, Pittsburgh, for appellant.

Mary Sell, pro se, appellee.

Before FORD ELLIOTT, MUSMANNO and HESTER, JJ.

HESTER, Judge:

Stephen Sell ("Father") appeals from the support orders dated July 29, 1996, and October 31, 1996.[1] The record reveals that Father has engaged in a spurious attempt to avoid his financial obligations with respect to his former wife, Mary Sell ("Mother"), appellee herein, and their adopted daughter, Kaitlin. Rather than provide Kaitlin the necessities of life, Father has chosen to use his financial resources to fund this continuing litigation. We affirm.

The factual and procedural histories follow. Mother and Father were married on May 25, 1990. After unsuccessful attempts to conceive a child, including fertility treatments, the parties contacted adoption organizations in 1993. In anticipation of adoption, both parties signed a letter of intent to adopt and power of attorney to permit Russian authorities to process the adoption. In July, 1994, the parties traveled to Russia to adopt Kaitlin, born December 16, 1993. The record contains a Russian adoption certificate issued July 22, 1994, and a United States certificate of citizenship for Kaitlin dated December 8, 1994.

Shortly after the parties returned to their home in Pittsburgh, their marriage deterio-

---

1. We note that the October 31, 1996 order amends the July 29, 1996 order with respect to Mother's award of $10,000.00 in counsel fees, which inadvertently was not included in the previous order.

rated, culminating in their separation in September, 1994. Mother filed an action for support on September 27, 1994. At this point, Father denied paternity based on the invalidity of the Russian adoption. A support hearing was held on December 22, 1994, after which the trial court entered an interim order requiring Father to pay $710 per month for alimony pendente lite ("APL") and $502 in child support. Father filed exceptions to the interim order.

Before addressing the merits of Father's exceptions concerning the propriety of the amount of APL and child support, the trial court held a hearing on January 2, 1996, to take testimony limited to the issue of the validity of Kaitlin's adoption and in particular, whether Father was estopped from attacking its validity. On January 12, 1996, the trial court recited its opinion in open court and held that Father was estopped from denying Kaitlin's adoption. The court also granted Mother's request for counsel's fees in the amount of $10,000.00. The trial court dictated its reasons for so holding into the record and later formalized its holding estopping Father from challenging Kaitlin's adoption in an order entered on February 16, 1996. The trial court failed to include the award of counsel fees to Mother in the February 16, 1996 order. Also on that date, the trial court remanded the issues of APL and child support to a hearing officer for an additional hearing and the entry of a final recommendation. Father filed a notice of appeal to this court from the February 16, 1996 order. By order dated September 19, 1996, and docketed October 29, 1996, we quashed the appeal as interlocutory.

In the meantime, a final recommendation was mailed to the parties on April 1, 1996. Father filed timely exceptions challenging the trial court's previous finding of estoppel and award of counsel fees. Father also excepted to the hearing officer's final recommendation that he pay APL and child support in the amount of $1,193. Following argument on exceptions, the trial court entered an order on July 29, 1996, denying all of Father's exceptions. The trial court again

failed to include the award of counsel fees to Mother in the July 29, 1996 order. Therefore, on October 31, 1996, it entered an order to correct this scrivener's error by adding a paragraph to amend the July 29, 1996 order to include counsel fees. Father appealed the July 29, 1996 order and the subsequent corrective order; the appeals then were consolidated.

Father presents eight issues in a statement of questions, which exceed one page, thereby violating Pa.R.A.P. Rule 2116. While it is within our province to refuse to consider Father's arguments, nonetheless, we will address the merits in the interest of judicial economy. *Andrews v. Andrews*, 411 Pa.Super. 286, 601 A.2d 352 (1991).

Father's myriad complaints may be summarized into three general categories. First, he argues that the court erred in applying the doctrine of estoppel to preclude him from challenging Kaitlin's adoption. Second, he contends the court erred in awarding Mother $10,000 in attorney fees. Finally, he complains that the trial court erred as a matter of law when it determined the income of the parties and set the support and APL awards.[2]

Father argues that the trial court erred in concluding that he was estopped from denying the validity of the Russian adoption decree and paternity of Kaitlin since the doctrine of estoppel is inapplicable to the facts herein. He claims Mother coerced him into continuing with the adoption with threats that she would reveal that he was an alcoholic and that she would harm Leah, his child from a previous marriage. Moreover, Father contends that the Russian adoption was illegal since Kaitlin, in actuality, was "purchased," and he should not be bound by the adoption or required to pay support.

We review the trial court's rationale with respect to its application of the doctrine of estoppel. Clearly, the biological nature of Father's status as Kaitlin's parent is not in question. Rather, appellant's legal status as Kaitlin's Father is the issue before this

---

**2.** We note that a final divorce decree was entered on February 19, 1997. Therefore, we may consider the propriety of the APL award. *Leister v. Leister*, 453 Pa.Super. 576, 684 A.2d 192 (1996).

court.[3] In a brilliant extrapolation of logic and law, the trial court analyzed the Restatement of Conflict of Laws with regard to foreign divorce decrees and the public policy considerations present in this case. The court concluded that Father was estopped from challenging his paternity of Kaitlin. Specifically, the court employed the estoppel doctrine set forth in section 74 of the Restatement (Second) Conflict of Laws, which states: "A person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so." Comment (b) indicates that this type of estoppel is

> not limited to situations of 'true estoppel' where one party induces another to rely to his damage upon certain representations. The rule may be applied whenever, under all the circumstances, it would be inequitable to permit a particular person to challenge the validity of a divorce decree.

In *Lowenschuss v. Lowenschuss*, 396 Pa.Super. 531, 579 A.2d 377 (1990), we relied upon section 74 to illustrate that the doctrine of estoppel could be applied to the following factual situation. In that case, the wife filed a divorce action. The husband, an attorney, defended against the action on the ground that no legal marriage existed between the parties because his wife's previous divorce was invalid. We noted that the parties cohabitated for seventeen years and had four children together. At the time of the marriage, the husband was aware of his wife's previous divorce. Moreover, he knew of the defect in the divorce for at least seven years before his wife instituted the divorce action against him. Therefore, we determined he was estopped from challenging the validity of the marriage.

While the trial court recognized that *Lowenschuss* involved a third party attack on a prior divorce decree, it nevertheless concluded that the principles in the case were broad enough to encompass the instant matter. The trial court stated, in applying the reasoning of *Lowenschuss* :

We believe that the doctrine is broad enough to apply in this case where father seeks to avoid the adoption, and thereby cause this child to have no father who would be responsible to carry out parental doctrine, parental obligation.

Thus we believe that the doctrine would be applicable here and it is very much analogous to attacking the foreign decree in this case.

As we already have said, father fully participated in the adoption process, went to Russia, took possession of the child, brought the child back, treated the child as his own. He then, subsequently, separates from mother and wants to avoid child support and parental obligations of this child that he has caused to be brought to the United States and placed with him and mother, and he has treated as his own for a short period of time. To permit him to raise that defense is unconscionable, and would shock the conscious[sic] of the court and of society, and this is a case where estoppel should actually apply thus withholding him from challenging the lawfulness of the adoption.

We note as an aside, that even if this form of general equitable estoppel was not applicable in the case, classic estoppel might well apply against him. In classic estoppel, which it is a much, much more pure legal analysis of the parties seeking to ascertain it, must show you there was misleading conduct by the party against whom estoppel was asserted.

In this case, we believe that father continuously participated in the adoption and led mother forward and indeed the adoption agency and the people in Russia to go forward and to place this child.

There must, secondly, be an unambiguous proof of reasonable reliance on this premise of misrepresentation in this case, and mother certainly relied upon father as she went forward to adopt the child and

3. "There are several means by which the law establishes paternity, irrespective of biological conception. Examples are adoption, acknowledgement, marriages to the mother and acceptance of the child, presumption of legitimacy by marriage during conception and ... by estoppel despite knowledge of inability to conceive and that the husband is not the father of the child." *Kohler v. Bleem*, 439 Pa.Super. 385, 654 A.2d 569, 577 (1995) (Tamilia, J., dissenting).

bring this child into this country and to raise that child.

And thirdly, there must be no duty of inquiry on the parties seeking to assert an estoppel. And again in this case, we believe that mother acted diligently and in good faith to proceed with her husband as they jointly attempted to adopt a child, and, thus, we believe the father, under classic estoppel also would be precluded from attacking this divorce decree.

Trial court opinion at N.T., 1/12/96, at 17–19.

The trial court made the following findings of fact, which are supported by the January 2, 1996 notes of testimony, at pages forty-four through ninety-eight. The majority of the findings rest on Mother's testimony, which largely went uncontradicted by Father, but also was supported by the testimony of Mother's brothers. Approximately six months after they married, the parties sought *in vitro* fertilization and then, adoption, in 1992. They applied to many different agencies, including Adoption By Choice, Children's Home of Pittsburgh, Three Rivers Adoption Council, Catholic Charities, Bethany Christian Agency, and Genesis Home for Unwed Mothers. Simultaneously, the parties prepared flyers that read, "Love Through Adoption," to advertise the fact that they were seeking adoption. They distributed the flyers in neighborhood mailboxes.

Finally, they decided on Adoption By Choice. The parties jointly undertook an extensive effort to comply with the adoption process. They underwent interviews, completed paperwork, participated in a home study that included psychological evaluations and physical examinations, and borrowed money in order to finance the adoption. Father made the travel arrangements for the parties' trip to Moscow.

The parties first were offered a baby boy, but they declined because they had specified their desire for a girl. The next child offered was a girl, but the parties' pediatrician opined that the child's medical history indicated the possibility of cerebral palsy, so they declined again. The third child, also a girl, was withdrawn at the last minute due to "vacations and paper work." N.T., 1/2/96, at 77. Finally, the parties were offered Kaitlin. In April, 1994, when the adoption appeared imminent, a baby shower was planned. Father took Leah to get special gifts for Mother. Father came to the final forty-five minutes of the party on April 9, 1994, and participated in it.

The trial court also concluded that Mother's brothers and a family friend, who all testified about their observations of the parties as they proceeded through the adoption process, were credible witnesses. They testified to the parties' obvious happiness after they returned to the United States with Kaitlin. Moreover, Father listed Kaitlin as his child on his health insurance with his employer and on his 1994 tax return. In February 1995, five months after the parties had separated, he sent Kaitlin a valentine addressed to "a special daughter" and signed it, "Love, Daddy." *Id.* at 97–98.

■ Father argued to the trial court that Mother should be precluded from asserting estoppel because she coerced him into the adoption and the baby was, in effect, "purchased" in Russia. We reject these arguments and agree with the trial court's factual determinations, as they are supported by the record. Father was not a man coerced into adoption. Instead, the testimony establishes that he was a full participant in the adoption process. Father fully aided in the adoption process, traveled to Russia, took possession of the child, brought her back to the United States, and treated her as his own. The "right to question the paternity is not unlimited." *Kohler v. Bleem,* 439 Pa.Super. 385, 654 A.2d 569, 573 (1995). We agree with the trial court that to allow Father to avoid child support and parental obligations in light of the foregoing would be "unconscionable, and would shock the conscious[sic] of the court and of society, and this case is one where estoppel should actually apply thus withholding him from challenging the lawfulness of the adoption." Trial court opinion at N.T., 1/12/96, at 18.

Moreover, even if we considered Kaitlin to have been "purchased," we cannot fathom how this fact would allow *Father* to contest the adoption. While the biological parents may have a right to complain about an im-

proper procedure pertaining to their child, Father was a participant in this process and acquiesced in it.

Taken together, it is clear that the public policy considerations at risk here are tremendous. Indeed, the public policy considerations here are akin to those underlying paternity by estoppel,[4] "which favors legitimacy and prevents an individual who has knowingly assumed the duties of parent from later renouncing those obligations, thereby leaving the child in an unprotected position." *Zadori v. Zadori*, 443 Pa.Super. 192, 661 A.2d 370, 373 (1995). To permit Father to challenge the legality of an adoption in which he participated willingly and enthusiastically would be tantamount to opening a veritable Pandora's box. In this Commonwealth, we hold adults accountable for their actions, and we protect children from abuse and neglect. Father has cited no case, nor are we aware of any case, wherein an adult individual has adopted a child, separated from a spouse, then challenged a support determination based upon a challenge to the legality of the adoption and the resulting lack of paternity.

While Father purports to be concerned with Kaitlin's welfare, it is apparent that he is not willing to support this baby financially, morally, or emotionally. The trial court concluded that Father had "engaged in a war of attrition," which it found intolerable. Trial court opinion at N.T., 1/12/96, at 21. It determined that based upon Father's actions, it would be inequitable to permit him to challenge the legality of the adoption. We concur. Clearly, the trial court's analysis was precise, erudite, and on-point. We conclude that it did not err when it estopped Father from challenging support based upon a denial of paternity.

Next, Father argues that the trial court improperly awarded appellee $10,000 in attorney's fees. Specifically, he argues the trial court erred when it failed to refer to the award in its February 16, 1996 order, then amended that order by adding a paragraph to the July 29, 1996 order. Father also contends the trial court abused its discretion in awarding the fees under both the Judicial Code and the Divorce Code.

First, we will consider Father's claim that the court exceeded its authority to amend a final order. On January 12, 1996, in open court, the trial court determined that Father was estopped from denying paternity of Kaitlin and announced its intention to enter an order that would grant Mother's request for counsel fees in the amount of $10,000. When the court filed its written order on February 16, 1996, it failed to include the award of counsel fees and instead, merely wrote that it estopped Father from denying paternity. Father filed an appeal on March 14, 1996, based upon entry of that order. On April 15, 1996, Father filed twenty-three pages of exceptions including, but not limited to, the award of counsel fees, the legality of the foreign adoption, and the authority of the court to estop Father from challenging paternity. The trial court denied Father's exceptions, and we quashed the appeal as interlocutory since no final support order had been entered.

On July 29, 1996, the court did enter a final support order. Father filed an appeal from that order on August 13, 1996. Thereafter, the trial court, relying upon Pa.R.A.P. Rule 1701(b)(1), entered an order on October 31, 1996, which amended the July 29, 1996 order to include the award of counsel fees to Mother. Father filed another appeal on November 27, 1996, which challenged the October 31, 1996 order.

■ Preliminarily, we note that a trial court may modify or rescind an order within thirty days after its entry if no appeal has been taken. *Commonwealth ex rel. Kunkin v. Bruck*, 297 Pa.Super. 410, 443 A.2d 1187 (1982). However, with few exceptions, a trial court is divested of its jurisdiction to act on a

---

**4.** Our Supreme Court has defined this concept as:

the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.

*Brinkley v. King*, 549 Pa. 241, 701 A.2d 176, 180 n. 5 (1997).

case once an appeal has been filed with this court. *Sutliff v. Sutliff*, 339 Pa.Super. 523, 489 A.2d 764 (1985). Rule 1701 provides for those exceptions. In pertinent part Rule 1701 states:

### Rule 1701. Effect of Appeal Generally

....

**(b) Authority of a trial court or agency after appeal.** After an appeal is taken or review of a quasijudicial order is sought, the trial court or other governmental unit may: Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, ... and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

**(c) Limited to matters in dispute.** Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the trial court or other governmental unit from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court or other governmental unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

■ We believe the October 31, 1996 order was entered to "correct" a "formal error." In the opinion dictated by the trial court in open court on January 12, 1996, the court's clear intention was to award appellee $10,000 in counsel fees. The orders entered by the court on February 16, 1996, and July 29, 1996, failed to include the award or make any mention of it whatsoever. Therefore, notwithstanding the exceptions filed by Father with regard to the award of counsel fees to Mother, this particular item was not the subject of appeal before this court on August 13, 1996. Further, the court entered the October 31, 1996 order to correct the oversight. The trial court had the authority to amend the order to reflect the previous award for counsel fees, which already was of record.

■ Father also maintains the award of counsel fees was improper under both the Judicial Code, 42 Pa.C.S. § 2503(7), and the Divorce Code, 23 Pa.C.S. § 3323(b). In actuality, the court concluded that the award of fees was justified under either *or* both of the statutory provisions. We need not discuss the applicability of 42 Pa.C.S. § 2503 or 23 Pa.C.S. § 3323(b) since we believe the award of counsel fees was proper under 23 Pa.C.S. § 3702. *Al Hamilton Contracting Co. v. Cowder*, 434 Pa.Super. 491, 644 A.2d 188, 190 (1994) ("The order of a trial court may be affirmed on appeal if it is correct on any legal ground or theory, regardless of the reason or theory adopted by the trial court.") In relevant part, that section provides, "In proper cases, upon petition, the court may allow a spouse ... reasonable counsel fees and expenses." The amount of an award of counsel fees "is within the discretion of the trial court and is subject to an abuse of discretion standard on appeal." *Butler v. Butler*, 423 Pa.Super. 530, 621 A.2d 659 (1993), reversed on other grounds, 541 Pa. 364, 663 A.2d 148 (1995).

In addressing this issue, the trial court stated,

In this case, Mother submitted her attorney's billing records and invoices indicating the nature of the service, time expended and corresponding charges. The services rendered were necessary, and the fees reasonable. In fact, Mother testified that she was forced to enlist a younger associate in the midst of litigation, as she had drained her savings and could no longer afford her initial, more senior counsel. Moreover, we did reduce Mother's request by 50%, based on our finding that Mother's counsel spent too much time on this case. Mother did not appeal that finding.

Trial court opinion, 6/18/97, at 9. We find *no* abuse of discretion.

■ Finally, Father argues that the trial court erred as a matter of law when it determined the income of the parties and set the support and APL awards. Our review of support orders is limited.

A trial court has broad discretion in fashioning awards and we will not reverse its decisions unless there is insufficient evi-

dence in the record to sustain it or the trial court has abused its discretion. *Lesko v. Lesko*, 392 Pa.Super. 240, 243, 572 A.2d 780 (1990). An abuse of discretion is "more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment." *Marshall v. Ross*, 373 Pa.Super. 235, 238, 540 A.2d 954, 956 (1988). A finding of such an abuse is not lightly made and must rest upon a showing of clear and convincing evidence. *Id.*

*Brower v. Brower*, 413 Pa.Super. 48, 604 A.2d 726, 729 (1992).

We have reviewed each of Father's allegations concerning the calculation of the parties' incomes. The trial court's analysis of these claims is conclusive and persuasive. Finding no abuse of discretion, and since the record supports the trial court's determinations, we reject Father's claims.

Order affirmed.