J-A23033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DANA LEE CARMEN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GARY JOHN CARMEN, | : | |
| | : | |
| Appellant | : | No. 779 WDA 2013 |

Appeal from the Order entered on April 9, 2013
in the Court of Common Pleas of Allegheny County,
Family Court Division, No. FD-08-7066-004

| | | |
|---|---|---|
| DANA LEE CARMEN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| GARY JOHN CARMEN, | : | |
| | : | |
| Appellee | : | No. 886 WDA 2013 |

Appeal from the Orders entered on April 9, 2013
and May 8, 2013 in the Court of Common Pleas of Allegheny
County, Family Court Division, No. FD-08-7066-004

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 30, 2014**

Gary John Carmen ("Husband") appeals, and Dana Lee Carmen ("Wife") cross appeals, the trial court's April 9, 2013 Order.[1]   We affirm in part and reverse and remand in part.

---

[1] We note that trial court subsequently entered an Amended Order on May 8, 2013, which corrected a clerical error in the April 9, 2013 Order.

The trial court set forth the relevant factual and procedural history in its Opinion, which we incorporate herein by reference. **See** Trial Court Opinion, 8/9/13, at 1-3.

Husband and Wife each filed a timely Notice of Appeal and a court-ordered Concise Statement of Matters Complained of on Appeal.[2]

On appeal, Husband raises the following issues for our review:

1. [Whether t]he [trial c]ourt erred in deciding the need for [W]ife and children was $400.00 [per] month for food and $300.00 [per] month for clothing[?]

2. [Whether t]he [trial c]ourt erred in its determination of net income for [Husband], pursuant to Pa.R.C.P. 1910.16, 1-5[?]

---

[2] Husband filed his Notice of Appeal on May 7, 2013. The trial court entered its Amended Order the following day, on May 8, 2013. Ordinarily, after an appeal is taken, the trial court may no longer proceed further in the matter. **See** Pa.R.A.P. 1701(a). However, Rule 1701(b) provides certain exceptions to the general prohibition, and permits the trial court to, among other actions, "correct formal errors in papers relating to the matter" while an appeal of the matter is pending. Pa.R.A.P. 1701(b)(1). Here, the trial court entered the May 8, 2013 Amended Order in an effort to formally correct its April 9, 2013 Order, which inadvertently omitted the $48.00 health insurance contribution for D., as previously determined by the hearing officer. Because the trial court did not make a substantive modification of the April 9, 2013 Order, the trial court's entry of its May 8, 2013 Amended Order was a permissible correction under Rule 1701(b)(1). **See** Pa.R.A.P 1701(b)(1); **see also Sell v. Sell**, 714 A.2d 1057, 1063 (Pa. Super. 1998) (holding that the trial court's entry of an amended support order awarding counsel fees to mother, after an appeal of the prior support order had been filed, was permitted by Rule 1701(b)(1) because the award of counsel fees was already of record, but had been inadvertently omitted from the prior order); **Hoag v. Hoag**, 646 A.2d 578, 580 n.2 (Pa. Super. 1994) (holding that the trial court's entry of an amended support order, after an appeal had been filed, to clarify and correct its prior support order, conformed with Rule 1701(b)(1) because it was not a substantive modification of the prior support order).

3. [Whether t]he [trial c]ourt erred in holding [that H]usband's borrowing money from a friend ($9,000.00) was income and not considering [W]ife's borrowing $180,000.00 from her mother was income[?]

4. [Whether t]he [trial c]ourt erred in not allowing [a] credit to Husband of the expenses [Husband] spent in accord with the [c]ourt directive: "Equally share the reasonable and ordinary expenses incurred on behalf of the children[?]"

5. [Whether t]he [trial c]ourt erred in apportionment of the $64,000 left in the marital accounts[?]

6. [Whether t]he [trial c]ourt erred in awarding attorney fees without specific findings of fact listed that are capable of being addressed[?]

7. [Whether t]he [trial c]ourt erred in requiring Husband to pay $25,000.00 from the value of his life insurance policy which does not exist[?]

8. [Whether t]he [trial c]ourt erred and miscalculated the cost for insurance coverage for [the parties' child,] D[. ("D."),] and Wife[?]

9. [Whether t]he [trial c]ourt erred by not permitting [Husband] to take the deposition of Dr. Eric Friedlander [("Dr. Friedlander),] who would speak to whether [the parties' child,] T[. ("T."),] is capable of independent living and capable of: "Activities of Daily Living without any support[?]"

Husband's Brief at 4 (issues renumbered for clarification, emphasis in original).

The trial court reviewed Husband's issues on appeal, set forth the relevant law, and concluded that most of his issues had been waived. *See* Trial Court Opinion, 8/9/13, at 3-6. The trial court determined that Husband had only preserved claims relating to (1) calculation of child support arrears; and (2) calculation of the child support obligation. *See id*. at 6. We adopt

the sound reasoning of the trial court, and will review only those claims properly preserved by Husband. *See id*.

With regard to the calculation of child support arrears, the trial court addressed this issue and determined that an error was made in calculating Husband's child support arrears, requiring reversal and remand as to this issue. *See id*. at 6-7. The trial court determined that the correct amount of child support arrears should have been $16,360.28. *See id*. We agree with the reasoning of the trial court, and reverse and remand as to this issue for recalculation of the child support arrears.

With regard to the calculation of the child support obligation, Husband argues that the trial court erred by determining that his monthly income is $2,244.00. Husband's Brief at 11-12. Husband claims that his income never approached this amount, but was more in line with the trial court's calculation in 2008. *Id*. at 12. Husband asserts that the trial court failed to consider the parties' income tax returns, which reveal no basis to increase his income. *Id*. Husband asserts that the lower court erred by determining that loans made to him were for attorney fees, despite his claim that they were for the children's expenses. *Id*. at 13. Husband argues that the trial court erred by not including Wife's income from the sale of Noni dietary supplement products, including rebates and commissions, in its calculations. *Id*. at 13-15. Husband contends that the trial court erred by not permitting the rebuttal deposition of Dr. Friedlander on the issue of whether T. is

disabled. *Id*. at 29-30. According to Husband, Dr. Friedlander would have testified that T. can see out of both eyes and, with special glasses, can see to the left. *Id*. at 30. Husband argues that because Wife's testimony regarding T.'s condition was inconsistent, Husband should have been allowed to take the rebuttal deposition of Dr. Friedlander. *Id*. at 30-31.

The trial court set forth the relevant law and addressed this issue, determining that it lacks merit. *See* Trial Court Opinion, 8/9/13, at 7-11. We agree with the reasoning of the trial court and affirm on this basis as to this issue. *See id*.

In her cross appeal, Wife raises the following issues for our review:

1. [Whether t]he [trial c]ourt erred and/or abused its discretion in finding that Husband had a net income of only $2,244.00 [per month,] and failing to find that Husband had a[n] earning capacity of $8,169.32 per month, which is consistent with his actual monies received per month through his bank account, his perquisites from employment[,] and previously being paid in cash[?]

2. [Whether t]he [trial c]ourt erred and/or abused its discretion in awarding only $5,000.00 in counsel fees [to Wife,] despite [Husband's] clear and unequivocal "vexatious, dilatory and willful" behavior[,] as found by the hearing officer, as well as his failure to complete discovery, and his attempts to amend his pre-trial statement and present additional witnesses during trial, all of which are conduct permitting the award of attorney fees pursuant to 42 Pa.C.S.A. § 2503(7) and 23 Pa.C.S.A. § 4351[,] and for also failing to find that [Husband] owned additional and sufficient assets which could be used to pay for [Wife's] attorney fees incurred as a result of [Husband's] conduct[?]

Wife's Brief at 7, 12 (capitalization omitted).[3]

With regard to Wife's first issue, Wife contends that the trial court erred by finding that Husband had a monthly income of only $2,244.00. *Id*. 7. Wife claims that she established, without contradiction, that $8,169.32 was flowing through Husband's bank account per month. *Id*. at 7. Wife claims that Husband, a self-employed general contractor,[4] had the ability to manipulate his income. *Id*. at 8. Wife asserts that Husband's testimony regarding his income was incredible, as he was unable to provide any details regarding any of his contracting jobs or the number of hours he worked per day or per week. *Id*. Wife contends that, although Husband claimed that he is unable to work as much as he previously worked due to health concerns, he presented little or no evidence regarding his health concerns or their impact on his ability to work. *Id*. at 8-9. Wife asserts that Husband has willfully failed to obtain or maintain appropriate employment. *Id*. at 9. Wife argues that the trial court erred by not attributing to Husband all of the advantages he enjoyed by running his own business, including the payment by his company of certain of Husband's monthly expenses (*i.e.*, truck payment, car payment, automobile insurance, health insurance, gasoline, *etc*.) totaling $4,877.52 per month. *Id*. According to Wife, these payments

---

[3] We note that Wife failed to include a statement of questions raised on appeal in her brief. *See* Pa.R.A.P. 2111(a)(4), and 2116(a). However, we will not dismiss her cross appeal on this basis.

[4] Husband is the president and sole employee of his company, Fred Carmen & Son.

are income to Husband in the form of either compensation or bonuses. **Id**. Wife points to the tax returns for Husband's company, noting that between 2009 and 2011, the company was profitable, netting an income to Husband of $5,400.00 to $7,000.00 per month. **Id**. at 10. Wife also contends that the trial court failed to attribute, as income to Husband, various deposits made into his personal checking account. **Id**. at 10-11. Wife claims that the trial court additionally erred by failing to attribute various alleged "loans" made to Husband as income, noting that Husband produced no documentation regarding the loans, and merely claimed that the money was given to him by a friend. **Id**. at 11. Wife asserts that these "loans" are clearly cash payments for work performed by Husband, and that they should have been attributed as income to Husband. **Id**. at 11-12.

The trial court set forth the relevant law and addressed this issue before determining that it lacks merit. **See** Trial Court Opinion, 8/9/13, at 7-9. We agree with the reasoning of the trial court and affirm on this basis as to this issue. **See id**.

With regard to Wife's second issue, Wife contends that the trial court erred by awarding her only $5,000.00 in attorney fees, despite finding that Husband exhibited "vexatious, dilatory and willful behavior."[5] Wife's Brief at 12. Wife asserts that the trial court erred by failing to award her attorney

---

[5] Although Husband challenged the award of attorney fees, the trial court found that he had waived this issue. **See** Trial Court Opinion, 8/9/13, at 6 n.7.

fees pursuant to 23 Pa.C.S.A. § 4351. **Id**. Wife claims that the trial court improperly ruled that there was no fund available to Husband for the payment of her attorney fees. **Id**. at 12-13. Wife asserts that the trial court's award of attorney fees appears to be premised on 42 Pa.C.S.A. § 2503(7), which permits such an award as a sanction for "dilatory, obdurate or vexatious conduct during the pendency of a matter." **Id**. at 13. Wife points to Husband's conduct during the course of this case, noting his various discovery, evidentiary and procedural violations, and asserts that she incurred additional attorney fees by having to contest his violations. **Id**. at 14-15. Wife claims that, based on the additional attorney fees that she was forced to incur because of Husband's behavior and conduct, the trial court erred by awarding her only $5,000.00 in attorney fees. **Id**.

The trial court set forth the relevant law and addressed this issue, determining that it lacks merit. **See** Trial Court Opinion, 8/9/13, at 11-14. We agree with the reasoning of the trial court and affirm on this basis as to this issue. **See id**.

Affirmed in part, and reversed and remanded in part in accordance with this Memorandum; Superior Court jurisdiction relinquished.

J-A23033-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2014

Circulated 09/16/2014 02:10 PM

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Dana Lee Carmen, :
:
                    Plaintiff, : No.: FD-08-07066-004
:
v. : 779 WDA 2013
: 886 WDA 2013
Gary John Carmen, :
:
                    Defendant. :

## OPINION

HENS-GRECO, J.                                                    August 9, 2013

This appeal arises from two Orders of this Court.. Defendant Gary J. Carmen ("Husband")

appeals from the April 9, 2013 Order. Plaintiff Dana L. Carmen ("Wife") filed a cross appeal from this

Court's April 9, 2013 Order and from this Court's Amended May 8, 2013 Order.[1] Those April and

May Orders of this Court granted in part and dismissed in part exceptions from the Master's October

23, 2012 Report and Recommendation.

## I. FACTUAL PROCEDURAL AND HSITORY

The relevant procedural and factual history is complex. The parties were married on June 28,

1985. They have three children: C.C., born on September 8, 1991; T.C., born on October 14, 1993;

D.C., born on July 5, 1995.[2] In May 2008, the parties separated and entered into an agreement that

provided that Husband would pay to Wife the sum of $200 per month. This aforementioned agreement

is called a "Nesting Agreement" (hereafter), because the parties decided that each would take turns

living with the children in the marital residence, on a week-on-week-off basis, such that their children

would never have to leave the "nest," so to speak. This $200 sum was paid by Husband to Wife on a

---

[1] Throughout the record of this case, the Plaintiff, Dana Carmen, is referred interchangeably as "Wife" and "Mother."
Likewise, Defendant, Gary John Carmen, as "Husband" and "Father."
[2] See Mother's Brief in Support of Cross-Exceptions and in Opposition to Father's Exceptions

monthly basis. These payments started on June 1, 2008 and continued until on or around May 16, 2010.

At that point, the Nesting Agreement was modified and increased the payments from $200 to $400 per month. *See* Wife's Petition to Modify Child Support and Schedule Complex Hearing, dated December 30, 2011. On July 1, 2011, the parties settled their divorce action, which preserved any outstanding issues with the Nesting Agreement. *See* Consent Order of Court, dated July 6, 2011. The Nesting Agreement ended on July 23, 2011, with their issues still preserved per the language of the divorce settlement. A divorce decree was entered on August 18, 2011. *See* Order of Court, dated August 18, 2011.

In November of 2011, Wife presented a Petition to Modify and a hearing was set for March 2, 2012. *See* Wife's Petition to Modify Child Support and Schedule Complex Hearing, dated December 30, 2011. Over the course of seven months – March 2012 until September 2012 – the Master conducted a trial that was four days in total length. The Master entered a Report and Recommendation on October 23, 2012. The Master amended that recommendation a week later on October 30, 2012, because she inadvertently forgot to include a $5,000 attorney's fees award in favor of Wife. The October 23, 2012 Report and Recommendation found that the Payee (Husband) had a monthly net income of $2,338.00 and the Payor (Wife) had a monthly net income is $2,2440.00. The Master found that Husband owed $34,060.59 under the Nesting Agreement, and $6,009.76 in child support arrears.

This Court heard the parties Exceptions on February 20, 2013 and entered an Order on April 9, 2013. The Court denied all of Husband's requested relief. As to Wife's cross-exceptions, this Court granted in part and dismissed in part. This Court granted Wife's paragraph 3 cross-exception, finding that the parties' child, T.C., does not, in fact, receive Social Security Disability. This Court granted Wife's paragraph 9 cross-exception, finding that Husband should pay a portion of T.C.'s

143a

2

unreimbursed medical bills. This Court also granted Wife's paragraph 7 cross-exception, deciding that Husband should pay child support for two children.[3]

The matter was remanded to Master to recalculate the child support arrears, in light of the April 9, 2013 Order's affect on retroactivity. The outstanding support arrears was $21,173.61, as of the April 9, 2013 Order. This Court then entered an amended Order on May 8, 2013. The Amended May 8, 2013 Order accounted for a $48 health insurance contribution for child D.C., payable by Husband to Wife. The support arrears were again recalculated, and the figure ballooned from $21,173.61 to $31,257.81.

## II.    ISSUES COMPLAINED OF ON APPEAL

In her timely filed Concise Statement of Matters Complained of on Appeal, Wife sets forth two grounds for reversal. First, Wife claims that the Court erred in finding that Husband had a net monthly income of only $2,244.00 and failing to find that the Husband had an earning capacity of $8,169.32 per month. *See* Mother's Concise Statement of Matters Complained of on Appeal, Paragraph 1. Secondly, Wife claims that the Court erred in awarding only $5,000 in counsel fees and for failing to find that Husband owned additional and sufficient assets which could be used to pay for Wife's attorney's fees. *Id.*, at Paragraph 2. Husband's Concise Statement of Matters Complained of on Appeal prompts this Court to explain why its Opinion is limited in its analysis of Husband's issues.[4]

Husband's Concise Statement lists 13 specific Matters, some of which have subparts (and sometimes even sub-subparts). The majority of these Matters are waived under Pa.R.A.P. Rule 1925(b)(4), and the Court should not consider them.

---

[3] A more detailed discussion of T.C.'s disability is located in section II-B of this Opinion. For purposes of procedural clarity, it is worth noting here that T.C. is the parties' adult child. At the age of 12, T.C. suffered a brain aneurysm. The Master found that T.C. was disabled for purposes of the PA Supreme Court Guidelines and Title 23 Pa. C.S.A. § 4321, but that he was only due a supplement. This Court agreed with the Master regarding the disability, but that such a finding warranted child support as if he was still a minor.

[4] For simplicity's sake, this Opinion refers to Husband's "Statement of Matters Complained Pursuant to Pa. R. A. P. 1925 (b)" as Husband's "Concise Statement of Matters Complained of on Appeal."

3   144a

Any party may file exceptions to the report or any part thereof, to rulings on objectives to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. Pa.R.C.P. No. 1920.55-2(2)(b). Each exception shall set for a separate objection precisely and without discussion. *Id.* Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters. *Id. See* Pa. R.C.P. 1910.12.

The Local Allegheny County Rules expound upon the exceptions procedure. For example, Local Allegheny County Rule 1910.12(h)(1) directs a party where and with whom one must file the Exceptions (Department of Court Records, and with the Exceptions Clerk). More to the point, however, is Local Allegheny County Rule 1910.12(i), which limits a party's exceptions brief to ten (10) pages.

Husband's Brief in Support of Exceptions, which is 33 pages long, did not comply with this rule. Husband did not seek leave of court to extend the page limit. Thus, this Court limited its review only to the exceptions listed within the first 10 pages of Husband's Brief. [See April 9, 2013 Order, line 7].

While Husband's Concise Statement seeks to reintroduce the waived matters, Husband does not address, nor does he contest, this Court's April 9, 2013 decision that found Husband waived all exceptions past page 10. Therefore, Husband's Statement of Matters Complained of on Appeal must be limited to only those matters which were properly "excepted."[5]

Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Failure to comply with a Rule 1925(b) order "may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of."

---

[5] For a list of the Husband's waived exceptions, see the April 9th Order, lines 7(a)-(r). The following is a list of the Matters in Husband's Concise Statement that improperly relate back to the waived exceptions, and thus are also waived. See Husband's "Statement of Matters Complained Pursuant to Pa.R.A.P. 1925(b)": Matters 4(b); 4(e); 6(a); 7; 9(a); 9(b); 9(c); 10; 11; 12.

*Lineberger v. Wyeth,* 894 A.2d. 141, 148 (Pa. Super. 2006). The Superior Court has also held that vague or overly broad statements in a Concise Statement of Matters Complained of on Appeal may also constitute a waiver.

"When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to this issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."

*Commonwealth v. Dowling,* 778 A.2d 683, 686-87 (Pa. Super. 2001).

In addition to situations where the appellant completely fails to mention an issue in his Concise Statement, the Superior Court has ruled that when Concise Statements are so vague as to prevent the court from identifying the issue to be raised on appeal, such issues are waived as well. *Id. See also Commonwealth v. Lord,* 553 Pa. 412, 719 A.2d 306 (1998).

In the case at bar, Husband's Concise Statement is confounding. It contains both properly raised issues and waived issues. An obvious remedy would be to cross out the waived issues and discuss the merits of the properly raised ones, but such an analysis is not so simple. Husband often addresses together a mix of the two types of issues.

For example, this case involves two types of arrears: The Nesting Agreement Arrears and the Child Support Obligation Arrears. The Nesting Agreement governed Husband's obligation to Wife and children from May 2008 to July 2011 – the time period between the separation and when Wife petitioned the Court for child support. When Wife petitioned for child support, Husband's legal obligation to provide for children then fell under the Child Support Obligation – July 2011 onward. Any outstanding disagreement regarding the Nesting Agreement funds Husband owed prior to that date were preserved, by the Divorce Settlement. In other words, Husband owed two types of funds: some arose out of the Nesting Agreement and some arose under the traditional child

146a

support order. Husband's Concise Statement confuses the two and treats them together, as one set of arrears. *See* Husband's Concise Statement, Paragraphs 1, 2, 4(c), 5.

To make matters worse, most of the issues, though not all the issues, relating the Nesting Agreement Arrears were waived when Husband improperly filed the Brief in Support of Exceptions. Furthermore, the language used throughout Husband's Concise Statement is often vague and repetitive, and it has impeded this Court's proper review and analysis. Additionally, Husband has raised one issue in his Concise Statement, Paragraph 8, for the very first time. As a consequence, this Court was faced with the task of parsing through Husband's Concise Statement to determine first what Husband's exact contentions actually were, and second, whether those issues were properly raised. This Court has decided that it will not address issues arising from Nesting Agreement for two reasons. First, most of the issues relating to the Nesting Agreement have been waived because of the length of Husband's Exceptions Brief.[6] Second, this Court could not decipher whether the remaining issues related to the Nesting Agreement or whether they related to the calculation of the Child Support Arrears or calculation of the current Child Support Obligation.

After careful review of Husband's Concise Statement, distinguishing the waived issues from the properly raised ones, this Court has decided to limit its review to three general issues: a) calculation of the Child Support Arrears, b) calculation of the child support obligation, c) Wife's attorney fees award.[7] To the extent that Husband has properly raised an issue, and to the extent that Husband's vague statement relates to the three aforementioned issues, Husband's argument is addressed.

### III. DISCUSSION OF PARTIES' CLAIMS

#### A. Calculation of Child Support Arrears

---

[6] The issues in Husband's Concise Statement, Paragraphs 4(c), 6(a), 6(b), 9(a), 9(b), 10, 11, 12, 13 are related to the Nesting Agreement and are waived because of the Brief Length.

[7] Husband waived all of his contentions regarding the attorney fees award, but this Court discusses the matter as Wife has raised the issue in her own right.

6 147a

In his Concise Statement, Husband properly raises the issue of child support arrears. *See* Paragraph 1. On this matter, Husband is correct. The total amount of Support Arrears is wrong. There was an error is calculation, but the underlying figures are correct. For the following reasons, the Court should reverse and remand for calculation only with the facts below.

The April 9, 2013 Order affected the child support arrears calculation in the following ways: T.C. was due child support (and not a supplement); and the Order should reflect Husband's contribution to a portion of T.C.'s unreimbursed medical expenses. *See* Order of Court, dated April 9, 2013, at Line 16. When the calculation was remanded to the Hearing Officer, the arrears were set at $21,173.61. *Id.,* at Line 15.

The May 8, 2013 Order clarified the April 9, 2013 Order and amended it to reflect that this Court inadvertently omitted the fact that Husband also owes to Wife a monthly $48 health insurance contribution to D.C. *See* Order of Court, dated May 8, 2013, at Line 1(d). Once more the arrears were recalculated. This time, however, the arrears ballooned to $31,257.81. *Id.,* at Line 2.

This figure is an error due to an incorrect entry of the data into the PACSES system. Such an error warrants a reversal and remand. It is regrettable that this Court did not catch its error. The proper child support arrears, as of May 8, 2013, should have been $16,360.28. That figure reflects a last payment of $1,940.43 made by Husband on April 23, 2013. In recognizing this error, the Court maintains that was in the arithmetic, and not the underlying figures.

## B. Calculation of Support Obligation

The parties also contend that the underlying figures used by the Court in arriving at the Support Obligation are erroneous. Wife argues that the Court erred when it determined that Husband had a net income of only $2,244.00. *See* Mother's Concise Statement, Paragraph 1. From what the Court can decipher, Husband properly raises three Matters that all relate to the support obligation. Husband alleges that the Court erred in the following ways: by "not permitting a deposition of Dr. Eric Friedlander" who would speak to whether T.C. was disabled for purposes of

7

148a

the Guidelines [*See* Husband's Concise Statement, Paragraph 3.]; by not including Wife's Noni income to calculating her net monthly income [*See Id.*, at Paragraph 4(a)]; in calculating Husband's monthly net income [*See Id.*, at Paragraph 4(b)]. All of these contentions are without merit. In addressing these matters, it is prudent to begin with the calculation of the monthly net income, beginning with Wife's and then Husband's.

The standard of appellate review of a trial court's child support order is well-established. Trial courts have "broad discretion" in determining a child support order, and will only be reversed where the order cannot be sustained on any valid ground. *Sirio v. Sirio*, 951 A.2d 1188, 1192 (Pa. Super. 2008). A Master's Report and Recommendation are "to be given the fullest consideration particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran*, 839 A.2d 1091 (Pa. Super. 2003). When determining income available for child support, it is the Trial Court's mandate to consider all forms of income. *MacKinley v. Messerschmidt*, 814 A.2d. 680 (Pa. Super. 2002).

Husband argues that the Court did not consider Wife's income she received for selling "Noni," which is a dietary supplement. Wife testified that she used to sell the product. *See* Transcript of Testimony, ("T.T."), dated May 29, 2012, at 291. When Wife sold cases of the product wholesale, she would get a cut in the form of a rebate. *Id.* That income would fluctuate. Wife testified that she earned anywhere between $53 to $273 per month. *Id.*, at 293. Of note, however, is that Wife testified that she hardly sells Noni since T.C. had the brain aneurysm in 2006. *Id.* Finally, Wife went back to school after the parties' separation to earn her Associates Degree as a Surgery Technician and is now employed full-time at Upper St. Clair Hospital. Master found Wife to be more credible than Husband. *See* Hearing Summary, Attachment 2 dated October 19,

149a

8

2012. The Court chose to calculate Wife's income based on her full-time occupation, and not to rely on her past history of selling a product, for which she earned little money in unpredictable spurts.[8]

Moving to the issue of Husband's monthly income, this Court does not agree with Wife that the attribution is too small, nor with Husband that the attribution is too large. One on hand, the Master determined that Husband owns his own business Fred Carmen & Sons, Inc. It is a construction business. *See* Hearing Summary, Attachment 2, dated October 19, 2012. Husband contends that his mother technically owns the business and that his brothers have a financial interest in the enterprise. *Id.* But it is clear that there is a comingling of funds, evidenced by the fact that the business pays for most of Husband's expenses and that the business stores its equipment on the land that Husband owns. *Id.* The business pays taxes on the building, and Husband collects no rent. Furthermore, the Court is not necessarily satisfied with Husband's reported tax return earnings. Lastly, the Court determined that Husband was less than credible as he paid $9,000 for an engagement ring for his current spouse. *Id.*

However, the Court cannot ignore the fact that Husband's health does prevent him from working the types of jobs he has done in the past. Husband has suffered several impairments related to the cancer treatments he received in the past. In light of the above evidence, the Court determined that Husband's monthly income is proper and not an abuse of discretion.

Moving to the final matter regarding the support calculation, Husband contends that T.C. is not disabled for purposes of deviating from the Child Support Guidelines. Pa. R.A.P. Rule 1910.16-5(b) provides: "In determining whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) Unusual needs…;
(4) Ages of the children…
(6) Medical expenses not covered by the children …

---

[8] Wife reported $515.84 in Noni earnings on her 2011 tax return. In September 2011, after previous months of unemployment and schooling, Wife became employed with St. Clair Memorial Hospital. *See* T.T., dated March 2, 2012, at 16-17. *See also* Exhibit 11.

9

150a

(9) Other relevant and appropriate factors, including best interests of the children...

A parent may be liable for support of a child over the age of 18. 23 Pa. C.S. §4321(3).

A parent's obligation to support his or her child generally ceases when the child turns 18 or graduates from high school. *See Id.* However, the parental duty of support can continue if an adult child has a physical or mental condition that exists at the time the child reaches the age of majority and prevents the child from being self-supporting. *See Kotzbauer v. Kotzbauer*, 937 A.2d 487 (Pa. Super. 2007); *Crawford v. Crawford*, 633 A.2d 155 (Pa. Super. 1933).

To rebut the presumption that a parent has no obligation to support an adult child, "the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Style v. Shaub*, 955 A.2d 403, 409 (Pa. Super. 2008) (quoting *Hanson v. Hanson*, 625 A.2d 1212, 1214 (Pa. Super. 1993)). The adult child has the burden of proof on these issues. *See Style*, 955 A22d at 409 (citing *Verna v. Verna*, 432 A.2d 630, 632 (Pa. Super. 1981)).

In the present case, Wife has met that burden. T.C.'s disabilities prevent him from being self-supporting. The aneurysm has left T.C. with physical impairments. He has a foot drop, for which he has had surgery. *See* T.T., dated March 3, 2012, at 60. A wrist drop, left hemi-paresis and left blindness is both of his eyes. *Id.* In addition to those physical impairments, T.C. also suffers from mental disabilities. In January 2011, T.C. attempted suicide. *Id.*, at 56-57. He eventually spent a month in Western Psychiatric Institute and Clinic. *Id.*, at 58. Later, he was admitted to Gateway Rehab for using cocaine. *Id.*, at 59. While T.C. has been doing better (he currently attends community college) and attends Narcotics Anonymous T.C. fights depression, bipolar disorder, and Attention Hyperactive Disorder. *Id.*, at 68. All of these impairments affect T.C.'s ability to earn a living wage. Wife testified credibly that, though T.C. is an average student, he routinely suffers from brain exhaustion. This, because "the brain is constantly repairing and rewiring itself." *Id.*, at 64.

151a

10

Husband alleges that the Court erred in finding T.C. disabled. In support of this contention, Husband alleges that Wife painted a "misleading picture" of T.C. abilities or lack thereof. *See* Husband's Concise Statement, at paragraph 3. However, Husband offers nothing to dispute Wife's description of T.C.'s critical impairments, even when his Concise Statement directs the Court's attention to exact transcript citations. The disability findings are principally located between pages 52 through 80 of the March 2, 2012 portion of the trial. Husband might disagree somewhat with the degree in which the impairment affects T.C.'s daily life, but not that the impairments are present. Husband even admits that T.C.'s vision is reduced 50% in each eye. *See* T.T., dated March 2, 2012, at 75.

Therefore, Husband's main contention is not that T.C.'s disabilities prevent him from earning a living wage , but rather that T.C. does not need any financial support. *See generally* T.T., dated May, 29 2013, at 300-305. Specifically, Husband seeks show that a disability finding is unwarranted, because Wife's parents have given them financial gifts in the past, *Id.*, at 305-306, and because T.C. has received savings bonds from an inheritance, *see* Husband's Brief in Support of Exceptions, at 4. Husband's reasoning is faulty. Whether T.C. is in need of money is irrelevant for determining whether his disability prevents him from living independently or earning a living wage. Furthermore, occasional gifts from family members cannot be construed as a sufficient wage or as a substitute for independent living.

## C. Attorney Fees

Wife argues that the Court erred by failing to consider Husband's other assets, which would have increased Wife's $5,000 award. This Court finds that the award is proper as it stands.

When an obligee prevails in a proceeding to establish paternity or to obtain a support order, the court may assess against the obligor filing fees, reasonable attorney fees and necessary travel and other reasonable costs incurred by obligees and the obligees' witnesses. 23 Pa. C.S.A. §4351(a). Section 2503(7) of the Judicial Code provides that a participant in a legal proceeding may be

11

152a

awarded counsel fees "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter" 42 Pa.C.S.A. § 2503(7). Section 102 of the Judicial Code defines a "participant" as "litigants, witnesses, and their counsel." 42 Pa.C.S.A. § 102. Appellate review of the trial court's grant of attorney fees involves consideration of the following factors:

> The amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*Diament v. Diament*, 816 A.2d 256, 270 (Pa. Super. 2003) (citing *LaRocca Estate*, 431 Pa. 542 (1968) ). In this present case, the Master did not abuse her discretion in finding a predicate for the granting of counsel fees. Furthermore, the Master's decision to limit the award to $5,000 in light of the aforementioned factors was also proper.

During Discovery, Wife made a Request for Production of Documents. Husband appeared at the Deposition with a Dole Banana box of the unorganized documents. *See* T.T., dated August 8, 2012, at 194. *See also Id.*, at 193-202 generally. Husband admitted that the documents were not in a specific order. *Id.*, at 194. The responses in the box were not verified. *See* T.T., dated May 29, 2012, at 56-57. Wife had to make copies of all the documents that afternoon, a task that Husband presumed might take up to 8 hours. *See* T.T., dated August 8, 2012, at 196. At the hearing, Attorney Kurowski attempted to excuse that behavior by arguing that Wife and Wife's Counsel had given Husband "so many depositions" and "so many documents." *Id.* Perhaps the inference was that Wife deserved, or at least should have expected, Husband's actions. Perhaps not. In any event, Attorney Kurowski was in no position to enlighten the Court as to what transpired at the deposition, because he was not present to represent his client and ensure that the Production satisfied the Request. *Id.*, at 197. Relying on Attorney Gricks' cross-examination questions and Husband's

153a

12

corresponding admissions, the Court was well within its discretion when it found Husband's conduct "dilatory, obdurate or vexatious."

Wife now argues that the Court erred when it did not increase Wife's $5,000 counsel fees award. Specifically, Wife argues that the Court failed to find that Father owned additional and sufficient assets which could be used to pay for the award. After a thorough review of the transcript, and after noting the specific pages in which Wife's Concise Statement directs the Court's eyes, this Court finds its decision was sound.

Certainly this litigation was burdensome and costly. The Master's Support Hearing alone was four days long and conducted over the series of seven months. Wife borrowed from her mother funds to pay for at least a portion of her legal representation. *See* T.T., dated Sept. 27, 2012, at 224-225. The Master properly investigated Attorney Gricks' billings. For example, Attorney Gricks left a message for Wife, but billed for 20 minutes. *Id.*, at 223. The Master recognized that the 20 minute timeframe encompassed both the telephone call and the preceding review of a status that necessitated the call. *Id.* When Husband's aunt died, Attorney Gricks investigated whether Wife was a beneficiary and whether Husband received an inheritance. The Master inquired as to why Attorney Gricks chose to depose a witness instead of checking with the Register of Wills' office. *Id.*, at 220. *See also* 227-231. The Master reviewed Attorney Gricks' $700 copying bill which resulted from the aforementioned Dole Banana box of documents. *Id.*, at 231-232. The Master reviewed the parties' ability to pay for the services rendered. *Id.*, at 233-235.

Wife contends that the Court failed to consider Husband's other assets from which he could pay for Wife's attorney fees. There is nothing in the record to support that allegation at all, let alone anything to suggest that such an error, even if it did exist, was a "plain error" or rose to the level of

154a

13

an abuse of discretion.[9] The Court's methodology was thorough, and it considered all the necessary factors.

## V. CONCLUSION

As mentioned above, however, the Child Support Arrears figure is wrong and should be reversed and remanded. In terms of the remaining contentions, this Court's Orders of April 9, 2013 and May 8, 2013 should be affirmed. In careful analysis of the properly raised issues, this Court concludes that the $5,000 attorney fees award is proper as it stands. As to the matter of T.C.'s disability, this Court concludes that he is due child support as his impairments presently prevent him from living independently and earning a living wage. The determination of the parents' monthly incomes is properly with the Court's discretion.

_____ , J.

159a

---

[9] "'Plain error' is found where the decision is based on factual findings with no support in the evidentiary (sic) or legal factors other than those that are relevant to such an award." *Sirio v. Sirio*, 951 A.2d 1188, 1198 (Pa. Super. 2008).

14